**2013-1160, -1179**

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

◆◆

NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC.,
and NOVARTIS CORPORATION,

*Plaintiffs-Appellants,*

DANA-FARBER CANCER INSTITUTE,

*Plaintiff,*

v.

TERESA STANEK REA, ACTING DIRECTOR,
U.S. PATENT AND TRADEMARK OFFICE,

*Defendant-Cross-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA IN CONSOLIDATED CASE NO. 10-CV-1138,
JUDGE ELLEN S. HUVELLE

**(CORRECTED) PRINCIPAL BRIEF OF PLAINTIFFS-APPELLANTS
NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC.,
AND NOVARTIS CORPORATION**

SCOTT S. CHRISTIE
MARK H. ANANIA
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

*Attorneys for Plaintiffs-Appellants*

April 1, 2013

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOVARTIS AG V REA,
2013-1160, -1179

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, Counsel for the Appellants Novartis AG, Novartis Vaccines and Diagnostics, Inc. and Novartis Corporation certifies the following:

1. The full name of every party or amicus represented by me is:  Novartis AG, Novartis Vaccines and Diagnostics, Inc. and Novartis Corporation.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  N/A.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   - For Novartis AG:  None

   - For Novartis Vaccines and Diagnostics, Inc.:  Novartis AG

   - For Novartis Corporation:  Novartis AG

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:  McCarter & English, LLP, Scott S. Christie and Mark H. Anania, appearing.

ME1 15341255v.1

Dated:  April 1, 2013

/s/Mark H. Anania
Scott S. Christie
Mark H. Anania
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel: (973) 622-4444
Fax: (973) 624-7070
Email: manania@mccarter.com

cc:    Dana Kaersvang, USDOJ; Nathan K. Kelley, USPTO; Joseph G.
       Piccolo, USPTO; Brian T. Racilla, USPTO

ME1 15341255v.1

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ...................................................................1

STATEMENT OF JURISDICTION...................................................................1

STATEMENT OF THE ISSUES......................................................................2

STATEMENT OF THE CASE .........................................................................3

STATEMENT OF THE FACTS .......................................................................5

    A.    PTO Examination of Patent Applications .............................................5

    B.    Patent Term Adjustment Provisions of 35 U.S.C. § 154(b).................7

    C.    Interpretation of the Effect of an RCE upon the
        Accrual of B Delay....................................................................9

    D.    Interpretation of A Delay/B Delay Overlap .......................................11

    E.    Rendering, Reconsidering and Reviewing PTA
        Determinations ..................................................................14

SUMMARY OF THE ARGUMENT ...............................................................18

ARGUMENT ................................................................................................20

I.    THE DISTRICT COURT ERRED IN CONSTRUING THE 180-DAY
    STATUTE OF LIMITATIONS OF 35 U.S.C. § 154(b)(4)(A) TO BE
    APPLICABLE TO NOVARTIS' CLAIMS..................................................20

    A.    The Plain Meaning of Section 154(b)(4)(A) Limits Its
        Application to a PTA Determination Made in Conjunction
        with a Notice of Allowance...............................................21

    B.    Applying Section 154(b)(4)(A) to an Issuance PTA
        Determination Constitutes Improper Statutory
        Construction and Frustrates Congressional Intent ............................24

    C.    Proper Construction of Section 154(b)(4)(A) Is Consistent
        with and Complements the PTA Regulatory Framework...................28

iii

D.    *Janssen Pharmaceutica, N.V. v. Kappos* Is Neither
Controlling Nor Persuasive .................................................................31

II.    IN THE ALTERNATIVE, THE DISTRICT COURT ERRED IN
RULING THAT THE 180-DAY STATUTE OF LIMITATIONS
OF 35 U.S.C. § 154(b)(4)(A) SHOULD NOT BE TOLLED .......................36

A.    Section 154(b)(4)(A) Is Susceptible to Equitable Tolling .................37

B.    Section 154(b)(4)(A) Should Be Equitably Tolled ............................40

III.    THE DISTRICT COURT ERRED IN DENYING NOVARTIS'
CLAIM THAT DEPRIVATION OF PTA FOR THE NOVARTIS
PATENTS CONSTITUTES A TAKING WITHOUT JUST
COMPENSATION IN VIOLATION OF THE FIFTH AMENDMENT .....47

A.    Novartis Timely Raised Its Fifth Amendment Claim ........................48

B.    The Term of the Novartis Patents Is Constitutionally
Protected Property ..............................................................................50

C.    The Deprivation of Term of the Novartis Patents Is
a Constitutional Taking ......................................................................56

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............................59

ME1 15341255v.1

## **TABLE OF AUTHORITIES**

**Page(s)**

FEDERAL CASES

*In re Andrew P. Chapman,*
  595 F.3d 1330 (Fed. Cir. 2010) ..........................................................29

*Andrews v. Principi,*
  351 F.3d 1134 (Fed. Cir. 2003) ..........................................................41

*Arctic Slope Native Ass'n v. Sebelius,*
  699 F.3d 1289 (Fed. Cir. 2012) ..........................................................37

*Armstrong v. United States,*
  364 U.S. 40 (1960)................................................................................52

*Baldwin County Welcome Ctr. v. Brown,*
  466 U.S. 147 (1984)..............................................................................41

*Block v. North Dakota,*
  461 U.S. 273 (1983)..............................................................................35

*Bowden v. United States,*
  106 F.3d 433 (D.C. Cir. 1997)......................................................41, 42

*Bowen v. City of New York,*
  476 U.S. 467 (1986)..............................................................................45

*Bristol-Myers Squibb Co. v. Kappos,*
  891 F. Supp. 2d 135 (D.D.C. 2012)........................................22, 39, 40

*Bristol-Myers Squibb v. Kappos,*
  841 F. Supp. 2d 238 (D.D.C. 2012), *motion for reconsideration denied,*
  891 F. Supp. 2d 135 (D.D.C. 2012)....................................................39

*Bull S.A. v. Comer,*
  55 F.3d 678 (D.C. Cir. 1995)........................................................37, 42

*Cammeyer v. Newton,*
  94 U.S. 225 (1876)................................................................................52

v

*Casitas Mun. Water Dist. v. United States*,
    708 F.3d 1340 (Fed. Cir. 2013) ....................................................47, 50

*Commc'ns Vending Corp. of Arizona v. FCC*,
    365 F.3d 1064 (D.C. Cir. 2004) ...........................................................41

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992)........................................................................25, 26

*Consol. Fruit-Jar Co. v. Wright*,
    94 U.S. 92 (1877) .................................................................................51

*Duncan v. Walker*,
    533 U.S. 167 (2001)..............................................................................26

*Exelixis, Inc. v. Kappos*,
    2012 WL 5398876 (E.D. Va. Nov. 1, 2012) ...............................19, 44

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushi Co.*,
    535 U.S. 722 (2002)..............................................................................51

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
    527 U.S. 627 (1999)..............................................................................51

*Franchi v. Manbeck*,
    972 F.2d 1283 (Fed. Cir. 1992) ...........................................................35

*Gray v. Phillips Petroleum Co.*,
    858 F.2d 610 (10th Cir. 1988) .............................................................41

*Hartford-Empire Co. v. United States*,
    323 U.S. 386 (1945).............................................................................51

*Henderson v. Shinseki*,
    __ U.S. __, 131 S. Ct. 1197 (2011).....................................................38

*Holland v. Florida*,
    __ U.S. __, 130 S. Ct. 2549 (2010).................................37, 40, 41, 46

*Huntleigh USA Corp. v. United States*,
    525 F.3d 1370 (Fed. Cir. 2008) .........................................47, 48, 56, 57

vi

*Irwin v. Dep't of Veterans Affairs*,
    498 U.S. 89 (1990) .............................................................................37

*James v. Campbell*,
    104 U.S. 356 (1881) ...........................................................................51

*Janssen Pharmaceutica, N.V. v. Kappos*,
    844 F. Supp. 2d 707 (E.D. Va. 2012) .........................................31, 32, 33, 34, 35

*Jarrell v. U.S. Postal Serv.*,
    753 F.2d 1088 (D.C. Cir. 1985) ..........................................................42

*Lingle v. Chevron U.S.A., Inc.*,
    544 U.S. 528 (2005) .....................................................................56, 58

*Louisville Joint Stock Land Bank v. Radford*,
    295 U.S. 555 (1935) ...........................................................................52

*Lynch v. United States*,
    292 U.S. 571 (1934) ...........................................................................52

*Martinez v. Orr*,
    738 F.2d 1107 (10th Cir. 1984) ........................................................42

*McKeever v. United States*,
    14 Ct. Cl. 396 (1878) .........................................................................51

*Orenshteyn v. Citrix Sys., Inc.*,
    691 F.3d 1356 (Fed. Cir. 2012) ........................................................33

*Penn Central Transp. Co. v. New York City*,
    438 U.S. 104 (1978) ...........................................................................58

*Polar Tankers, Inc. v. City of Valdez*,
    557 U.S. 1 (2001) ...............................................................................49

*Reid v. Dept. of Commerce*,
    793 F.2d 277 (Fed. Cir. 1986) ..........................................................25

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ...........................................................................52

vii

*Schooner Harbor Ventures, Inc. v. United States*,
    569 F.3d 1359 (Fed. Cir. 2009) ..........................................................58

*Sebelius v. Auburn Reg. Med. Ctr.*,
    ___ U.S. ___, 133 S. Ct. 817 (2013)........................................38, 40

*Smith v. Jefferson County Bd. of Sch. Comm'rs*,
    641 F.3d 197 (6th Cir. 2011) ...............................................................49

*The Arnold P'ship v. Dudas*,
    362 F.3d 1338 (Fed. Cir. 2004) ..........................................................29

*United States v. Burns*,
    79 U.S. (12 Wall.) 246 (1870) ............................................................52

*United States v. Cotton*,
    760 F. Supp. 2d 116 (D.D.C. 2011)....................................................25

*United States v. Dubilier Condenser Corp.*,
    289 U.S. 178 (1933)..............................................................................51

*United States v. Head*,
    552 F.3d 640 (7th Cir. 2009) ...............................................................26

*United States v. Lin*,
    101 F.3d 760 (D.C. Cir. 1996)............................................................25

*United States v. McDade*,
    699 F.3d 499 (D.C. Cir. 2012)............................................................41

*Wyeth Holdings Corp. v. U.S. Dept. of Heath and Humans Servs.*,
    607 F. Supp. 2d 25 (D.D.C. 2009)......................................................29

*Wyeth v. Dudas*,
    580 F. Supp. 2d. 138 (D.D.C. 2008)................................11, 12, 43, 44

*Wyeth v. Kappos*,
    591 F.3d 1364 (Fed. Cir. 2010) ("*Wyeth*") ...............................*Passim*

*Young v. United States*,
    535 U.S. 43 (2002)...............................................................................37

*Zoltek Corp. v. United States*,
    442 F.3d 1345 (Fed. Cir. 2006) (Plager, J., dissenting), *vacated*, 672 F.3d
    1309 (Fed. Cir. 2012) (*en banc* rehearing) ........................................................53

*Zoltek Corp. v. United States*,
    464 F.3d 1335 (Fed. Cir. 2006) (Newman, J., dissenting from denial of
    petition for *en banc* rehearing), *cert. denied*, 551 U.S. 1113 (2007) .................53

## FEDERAL STATUTES

5 U.S.C. § 702 ............................................................................................................1

5 U.S.C. § 706 ..........................................................................................................36

28 U.S.C. § 1291 ........................................................................................................1

28 U.S.C. § 1295 ........................................................................................................1

28 U.S.C. § 1331 ........................................................................................................1

28 U.S.C. § 1338 ........................................................................................................1

28 U.S.C. § 1361 ........................................................................................................1

28 U.S.C. § 2106 ......................................................................................................49

28 U.S.C. § 2401 ....................................................................................5, 18, 28, 48

35 U.S.C. § 111 ..........................................................................................................5

35 U.S.C. § 131 ..........................................................................................................5

35 U.S.C. § 132 ................................................................................................6, 9, 10

35 U.S.C. § 151 ..........................................................................................................6

35 U.S.C. § 154 ................................................................................................*Passim*

35 U.S.C. § 261 ........................................................................................................51

## RULES

FED. R. CIV. P. 56(a)................................................................................................20

ME1 15341255v.1

## REGULATIONS

37 C.F.R. § 1.114 ........................................................................................6

37 C.F.R. § 1.702 ...................................................................................9, 10

37 C.F.R. § 1.703 ...................................................................................9, 10

37 C.F.R. § 1.705 ............................................... 14, 15, 16, 17, 22, 30, 31

## LEGISLATIVE MATERIALS

65 Fed. Reg. 56,366, 56,388 (Sept. 18, 2000) ........................................15

69 Fed. Reg. 21,704, 21,706 (Apr. 22, 2004) .........................................15

69 Fed. Reg. 34,283, 34,283-84 (June 21, 2004).....................................11

Pub. L. No. 106-113, 113 Stat. 1501, 1501A-557 (1999) ........................7

## CONSTITUTIONAL PROVISIONS

Fifth Amendment ............................................................................. *Passim*

U.S. Const., Amendment V, cl. 4..............................................................50

U.S. Const., Article I, § 8, cl. 8................................................................50

ME1 15341255v.1

## STATEMENT OF RELATED CASES

The cases *Exelixis, Inc. v. Rea*, No. 13-1175, and *Exelixis, Inc. v. Rea*, No. 13-1198, pending in this Court will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

This is an appeal from a November 15, 2012 order denying in part summary judgment otherwise granted in favor of plaintiffs-appellants Novartis AG, Novartis Vaccines and Diagnostics, Inc. and Novartis Corporation (collectively, "Novartis") and dismissing as untimely Novartis' claims for recalculation of patent term adjustment ("PTA") with respect to United States Patent Nos. 6,878,721; 7,081,532; 7,097,827; 7,112,673; 7,253,257; 7,265,089; 7,323,451; 7,348,353; 7,423,148; 7,442,388; 7,470,709; 7,516,741; 7,534,890; 7,576,221; 7,687,637 and 7,696,216 (collectively, the "Novartis Patents") by the United States District Court for the District of Columbia.

The District Court had jurisdiction over the case below pursuant to 28 U.S.C. §§ 1331, 1338(a) & 1361; 35 U.S.C. § 154(b)(4)(A); and 5 U.S.C. § 702 because the action arose under the Patent Act, 35 U.S.C. § 1, *et seq.*, and because Novartis suffered legal wrong and was adversely affected and aggrieved by action of the U.S. Patent and Trademark Office ("PTO"). This Court has jurisdiction over this appeal filed January 13, 2013 pursuant to 28 U.S.C. §§ 1291 & 1295(a)(1) and

1

(a)(4)(C) in that it is an appeal from a final judgment disposing of all parties' claims in a case arising under the Patent Act and before the District Court pursuant to 35 U.S.C. § 154(b).

## STATEMENT OF THE ISSUES

1.    Whether the District Court erred in concluding that the 180-day statute of limitations in 35 U.S.C. § 154(b)(4)(A) is applicable to Novartis' claims for PTA recalculation as to the Novartis Patents when the plain and unambiguous language of the statute excludes Novartis' PTA challenges from this limitations period.

2.    Whether, in the alternative, the District Court erred in determining that the 180-day statute of limitations in 35 U.S.C. § 154(b)(4)(A) should not be equitably tolled with regard to Novartis' claims for PTA recalculation as to the Novartis Patents given Novartis' reasonable reliance upon the PTO's consistent decade-long position that Novartis' substantive legal theories supporting PTA deprivation are meritless.

3.    Whether the District Court erred in dismissing as untimely and therefore denying Novartis' claim that the PTO's deprivation of PTA for the Novartis Patents constitutes a taking of Novartis' valuable property without just compensation in violation of the Fifth Amendment.

2

## STATEMENT OF THE CASE

This case is about the PTO's improper interpretation and application of a procedural statute of limitations for the purpose of depriving Novartis of its substantive right to hundreds of days of term for sixteen patents. Because the relevant language of this statute of limitations recently has been amended in a manner that prevents future litigants from raising the legal claims asserted herein, the scope of relief sought is almost exclusively limited to Novartis itself.

Patent term adjustment is a mechanism by which the PTO adds additional term to patents to offset excessive PTO delay in the patent prosecution process. However, the PTO has a history of arbitrarily and capriciously interpreting statutory and regulatory provisions governing PTA in a manner that prevents patentees from securing the full and complete term for their patents. The District Court held that the PTO's improper interpretation of the effect of filing a Request for Continued Examination ("RCE") on the calculation of B Delay was in excess of statutory authority and not in accordance with law (the "RCE Claim"). Appendix (hereinafter "A__") at A24 (Opinion at 24). Furthermore, this Court ruled in *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010) ("*Wyeth*") that the PTO's interpretation of calculating the overlap of A Delay and B Delay was improper (the "Wyeth Claim").

The gravamen of this case is the PTO's contention that Novartis is untimely under 35 U.S.C § 154(b)(4)(A) in securing relief pursuant to its RCE Claim and its Wyeth Claim.   At all relevant times, Section 154(b)(4)(A) dictated that "[a]n applicant dissatisfied with a [PTA] determination made by the Director under paragraph (3) shall have remedy by a civil action against the Director filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent."  The PTO erroneously asserts that because the RCE Claim and the Wyeth Claim as to each of the Novartis Patents was filed more than 180 days after the grant of each of these patents, Novartis is foreclosed from seeking the additional PTA for these patents that otherwise would be afforded by these substantive claims.

To the contrary, Novartis' pursuit of its RCE Claim and its Wyeth Claim is timely for three separate and independent reasons.   First and foremost, when properly construed, the 180-day limitations period set forth in Section 154(b)(4)(A) does not apply to the type of PTA determinations raised on behalf of the Novartis Patents.   However, even if the 180-day limitation period in Section 154(b)(4)(A) somehow is relevant, the commencement of that period should be equitably tolled because Novartis justifiably relied upon the PTO's longstanding position that the RCE Claim and the Wyeth Claim were not viable.   Finally, the PTO's permanent deprivation of patent term to which Novartis is entitled for each of the Novartis

4

Patents constitutes a taking without just compensation in violation of the Fifth Amendment, a claim timely raised under the prevailing six-year statute of limitations. *See* 28 U.S.C. 2401(a). Prevailing on any one of these three theories would afford complete relief to Novartis.

Novartis filed several lawsuits, later consolidated before the District Court, challenging the PTO's determination of PTA as to each of the Novartis Patents. The District Court granted summary judgment in favor of Novartis on the substantive RCE Claim and as to application of the substantive Wyeth Claim – under an ordinary tolling theory – to a patent for which Novartis had sought PTO reconsideration of the PTA determination on *Wyeth* grounds. However, to the extent Novartis otherwise raised its RCE Claim and Wyeth Claim for patents later than 180 days after patent issuance, the District Court dismissed these claims as untimely despite the statutory construction, equitable tolling, and Fifth Amendment arguments. This appeal followed.

## STATEMENT OF THE FACTS

### A.     PTO Examination of Patent Applications

The patent examination process begins with the filing of an application with the PTO. *See* 35 U.S.C. § 111(a). A patent examiner then examines the application to determine whether the applicant is entitled to a patent. *See* 35 U.S.C. § 131. During the examination process, a patent examiner routinely rejects

one or more claims as not allowable. Such a rejection is communicated via an Office Action, which notifies the applicant and explains the reasons for the rejection. *See* 35 U.S.C. § 132(a). The applicant may then respond to the patent examiner's arguments and request further consideration. *See id.* If the patent examiner is convinced, examination ends and the PTO issues a Notice of Allowance indicating that the invention is eligible for a patent. *See* 35 U.S.C. § 151. Upon receipt of the Notice of Allowance, the applicant is required only to pay an issue fee and the PTO will issue a patent. *See id.* But if the patent examiner remains unconvinced, he or she issues a Final Office Action rejecting the application.

However, the issuance of a Final Office Action need not be the conclusion of the examination process. *See* 35 U.S.C. § 132(a). A patentee is able to obtain further examination of an application despite the examiner's belief that no additional examination is warranted on the existing record. *Id.* In order to achieve such relief, the applicant files an RCE to request "continued examination" before the patent examiner, avoiding the need for filing a new patent application. *See* 35 U.S.C. § 132(b). But to take advantage of this process, the PTO requires that the RCE include a "submission," such as an amendment or new evidence of patentability. 37 C.F.R. § 1.114. This ensures that the RCE serves its intended function, and is not used merely as a means to delay prosecution.

6

### B.    Patent Term Adjustment Provisions of 35 U.S.C. § 154(b)

Until relatively recently, a U.S. patent expired seventeen years after it *issued*.  *See* 35 U.S.C. § 154 (1992).  However, in order to comply with treaty obligations under the General Agreement on Tariffs and Trade ("GATT") and harmonize the U.S. patent laws with those of other countries, Congress amended the Patent Act in 1995 to provide that a U.S. patent expires twenty years after the application for the patent is filed.  Thus, unlike the prior regime, this twenty-year period begins to run *before* a patent is issued.  But as Congress soon came to appreciate, any undue delay by the PTO in the examination of a patent application reduces the effective term of the applicant's patent and, thus, diminishes the applicant's ability to enforce his or her patent rights.  *See*, *e.g.*, A121-22 (145 Cong. Rec. H6929 (Aug. 3, 1999) (statement of Rep. Rohrabacher)).

Congress addressed the problem by passing the American Inventors Protection Act of 1999 (the "AIPA"), which sets deadlines for PTO examination of patent applications and compensates patentees with additional patent term when the PTO fails to meet those deadlines.  *See* A124-28 (Pub. L. No. 106-113, 113 Stat. 1501, 1501A-557 (1999)).  The relevant provisions, codified at 35 U.S.C. § 154, guarantee "diligent [patent] applicants at least a 17-year term by extending the term of any patent not granted within three years of filing."  A132 (H.R. Rep. No. 106-464, at 125 (1999)).  In this manner, Congress sought to ensure that the new

7

method of determining the effective life of a patent would result in a patent term no less than under the pre-GATT regime of seventeen years from issuance. A132.

To accomplish this goal, Congress established a framework for rewarding patentees after the conclusion of the examination process in the form of PTA corresponding to the periods of unreasonable PTO delay. "A Delay" corresponds to the PTO's failure to respond promptly to specific applicant submissions or events during prosecution, most commonly the inability of the PTO to mail the first Office Action to the applicant within fourteen months of the actual filing date of the patent application. *See* 35 U.S.C. § 154(b)(1)(A). The computation of A Delay for each of the Novartis Patents is not in dispute and, thus, is not an issue in this case.

Whereas A Delay focuses on the timing of the PTO's response to discrete events in the examination process, "B Delay" recognizes the intent that the entire examination process be completed within a limited period of time. The availability of B Delay thus is the cornerstone of the guarantee that patentees will enjoy an effective terms of at least seventeen years for their patents. A132. If the PTO does not issue a patent within three years of an application being filed, the patentee must be compensated with additional patent term to offset the examination delay by the PTO, and to bring the enforceable term of the patent closer to seventeen years. 35 U.S.C. § 154(b)(1)(B). On the other hand, if the PTO fulfills its statutory mandate

8

to issue a patent within three years from the filing of the application, the patentee receives no additional patent term under this subsection of the statute. *Id.*

If the PTO fails to meet the three-year pendency guarantee, the statute prescribes a remedy: "the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued." 35 U.S.C. § 154(b)(1)(B). However, to the extent there is overlap of the A Delay and B Delay periods, the applicant is precluded from double-counting days of PTO delay. 35 U.S.C. § 154(b)(2)(A).

### C.    Interpretation of the Effect of an RCE upon the Accrual of B Delay

Over a decade ago, the PTO issued regulations to implement 35 U.S.C. § 154, including 37 C.F.R. §§ 1.702 and 1.703. Section 1.702 generally explains the grounds for PTA, including the PTO's "[f]ailure to issue a patent within three years of the actual filing date of the application." 37 C.F.R. § 1.702(b). Consistent with § 154(b)(1)(B), this regulation requires that the three-year pendency period not include "[a]ny time consumed by continued examination of the application under 35 U.S.C. § 132(b)." 37 C.F.R. § 1.702(b)(1).

The other regulation, 37 C.F.R. § 1.703, purportedly specifies the amount of PTA awarded to a patentee under Section 154(b)(1)(B) and Section 1.702. Section 1.703 provides that "[t]he period of adjustment under § 1.702(b)" "is the number of days, if any, in the period beginning on the day after the date that is three years

9

after the date on which the application was filed." 37 C.F.R. § 1.703(b). But the regulation then proceeds to impose limitations that are not found in and contravene the plain language of the statute, stating that PTA shall "not include[e]. . . [t]he number of days, if any, in the period beginning on the date on which a request for continued examination of the application under 35 U.S.C. 132(b) was filed and ending on the date the patent was issued." *Id.* Furthermore, 37 C.F.R. § 1.703(b) treats as "time consumed by continued examination" under 35 U.S.C. § 154(b)(1)(B) the entire period beginning when an RCE was filed and "ending on the date the patent was issued." *Id.* This regulation thus denied accrual of B Delay for all the relevant Novartis Patents, even though all the RCEs were filed during prosecution of those patents after the respective three-year deadlines had already passed.

Recognizing such incongruity, the District Court determined that the PTO's interpretation of Section 154(b)(1)(B), as embodied in 37 C.F.R. § 1.703(b), is in excess of statutory authority and not in accordance with law. A24 (Opinion at 24). Nullifying the PTO's decade-long policy, the District Court held that filing of an RCE *after* the three-year pendency period has no effect whatsoever upon the accrual of B Delay. A24.

10

### D.    Interpretation of A Delay/B Delay Overlap

From the advent of PTA in 1999 through early 2010, the PTO consistently took the position that when an application was subject to both A Delay and B Delay, these periods nearly always overlapped within the meaning of Section 154(b)(2)(A), even if they occurred on different calendar days.  *See* A133-34 (69 Fed. Reg. 34,283, 34,283-84 (June 21, 2004)); *see also* A91-92 (Defendant's Answer to the Second Amended Complaint [D.E. 30 in Case No. 1:10-cv-01138-ESH (consolidated)] at ¶¶ 20-23, 25).  At that time, the PTO had contended that the period of B Delay began to accrue from the filing date of the patent application, rather than from three years after the filing date of the patent application.  A133-34.  Consequently, the PTO had considered the overlap of A Delay and B Delay to include any period of A Delay within the first three years after filing a patent application.    A133-34.    Under this interpretation, a successful applicant was entitled to an adjustment equal to either the A Delay or the B Delay, whichever was longer, but — absent unusual circumstances — *never* to an adjustment equal to the A Delay plus the B Delay.

In *Wyeth v. Dudas*, 580 F. Supp. 2d. 138 (D.D.C. 2008), the district court rejected the PTO's A Delay/B Delay overlap interpretation holding that "[t]he only way that periods of time can 'overlap' is if they occur on the same day."  *Id.* at 141.  Accordingly, the district court concluded that a patentee is entitled to the

aggregation of A Delay and B Delay as long as common calendar days are not counted twice. *Id.* The PTO appealed this ruling to this Court, which affirmed in an opinion issued January 7, 2010. *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010). This Court explained that "Section 154(b)'s language is clear, unambiguous, and intolerant of the PTO's suggested interpretation." *Id.* at 1372.

On January 20, 2010, shortly after this Court issued its decision, the PTO announced that it would not seek further review, and that it would adhere to this Court's interpretation of the statute when calculating A Delay/B Delay overlap for patentees. A135 (PTO, *The USPTO and DOJ Will Not Seek Review* of *Wyeth v. Kappos* (Jan. 20, 2010)); *see also* A92 at ¶ 27. The PTO further announced that it would prepare guidance for expediting requests for recalculation of PTA consistent with *Wyeth*. A135. On January 26, 2010, the PTO provided that guidance in the form of interim procedures for patentees to request PTA recalculation in light of *Wyeth*, which included an expedited, informal procedure for seeking recalculation of PTA solely on the basis of the *Wyeth* decision. A136-38 (PTO, *Interim Procedures for Patentees to Request a Recalculation of the Patent Term Adjustment to Comply with the Federal Circuit Decision in Wyeth v. Kappos Regarding the Overlapping Delay Provision of 35 U.S.C. § 154(b)(2)(A)* (Jan. 26, 2010), 75 Fed. Reg. 5,043 (Feb. 1, 2010)). However, these interim procedures only extended this relief to patents issued on or after August 1, 2009, and only to

12

the extent such relief was pursued within 180 days of patent issuance. *See* A136-37. None of the Novartis Patents qualified and, thus, they were deprived not only of the PTO's expedited PTA recalculation, but also of the benefit of *Wyeth* altogether.

Such a result was diametrically opposed to the guidance afforded the PTO by its Patent Public Advisory Committee ("PPAC"), an advisory committee of patent practitioners created by the AIPA whose members are appointed by the Secretary of Commerce and serve as Special Government Employees. A139 (PTO, *Charter of the Patent Public Advisory Committee* (Jul. 29, 2000)). A specific objective and duty of the PPAC is to review PTO policies and provide guidance to the Director of the PTO in making policy decisions. A139. The PPAC established a *Wyeth* Subcommittee that carefully considered the extent to which the *Wyeth* decision should have retroactive effect. *See generally* A143-44 (Matteo, *Wyeth Decision: PPAC Patent Term Adjustment Recommendations* (Feb. 12, 2010)).

This esteemed body recommended that the benefit of *Wyeth* be extended to all patentees regardless of the dates of issuance of their patents, including patents issued before August 1, 2009. A144. Nevertheless, the PTO rejected this recommendation, claiming that patentees have only a six month window of opportunity after issuance of their patents to obtain recalculation of PTA

13

determinations, regardless of the PTO's fundamentally flawed interpretation of the statutory requirements governing calculation of PTA. A145-47 (PTO, *Response to Wyeth Decision: PPAC Patent Term Adjustment Recommendations* (Mar. 10, 2010)). This decision was motivated, at least in part, by the PTO's desire to avoid the administrative burden associated with adopting the PPAC's recommendation. A145 (noting that following the PPAC's recommendation would involve review of over one million patents).

### E.    Rendering, Reconsidering and Reviewing PTA Determinations

At all times relevant to the Novartis Patents,[1] Section 154(b) directed the PTO to "make a determination of the period of any patent term adjustment" and "transmit a notice of that determination with the written notice of allowance of the application." 35 U.S.C. § 154(b)(3)(B)(i) (2012); *see* 37 C.F.R. § 1.705(a). However, because the Notice of Allowance is sent substantially before the patent issues, the PTA determination reflected on the Notice of Allowance is preliminary and subject to change. By definition, B Delay continues to accrue until the date a patent actually is granted. Because B Delay cannot be determined until the patent issues, calculation of overlap between A Delay and B Delay also cannot be determined until issuance of the patent. *See* A149 (PTO, *PTA Calculation* (Feb.

---

[1] In January 2013, Congress promulgated a number of amendments to the Leahy-Smith America Invents Act that changed the procedural rules for a patentee

12, 2010) at 2). Accordingly, the determination set forth in the Notice of Allowance includes only the PTO's determination of A Delay. A149.

After the applicant pays the issue fee, and a few weeks before issuance of the patent, the PTO sends the applicant an Issue Notification. A153 (Manual for Patent Examining Procedure ("MPEP") § 1306.03). Currently, the PTO includes on the Issue Notification a projection of the date of patent issuance and an estimation of the final PTA based upon that projection. *See* A155 (65 Fed. Reg. 56,366, 56,388 (Sept. 18, 2000)). However, the PTO has announced plans to cease providing PTA information on the Issue Notification. A158 (69 Fed. Reg. 21,704, 21,706 (Apr. 22, 2004)).

The PTO's determination of the final PTA, including B Delay and any A Delay/B Delay overlap period, occurs only when the patent issues. *See* A149. Indeed, the PTO's regulations explain that the definitive determination of PTA is "indicated in the patent." 37 C.F.R. § 1.705(d) ("[I]f there is a revision to the patent term adjustment indicated in the notice of allowance, the patent will indicate the revised patent term adjustment."); s*ee also* A173 (PTO, *General Information Concerning Patents* (Nov. 2011)) ("a final PTA value is printed on the front of the patent"). This conclusive PTA determination at patent issuance serves as the basis

---

seeking PTA. *See, infra* pp. 26-27. Novartis' claims are governed by the language of the relevant statutes that preceded these amendments.

upon which a patentee can seek reconsideration of the PTA calculation for the patent. *See* 37 C.F.R. § 1.705(d).

Section 154(b) requires the PTO to afford applicants an "opportunity to request reconsideration of any patent term adjustment determination." 35 U.S.C. § 154(b)(3)(B)(ii). The PTO's regulations direct an applicant to seek agency reconsideration at one of two different points in time, depending upon the nature of the claim. To the extent an applicant intends to challenge the determination of A Delay as reflected in the Notice of Allowance, a request for PTO reconsideration must be filed at or before payment of the issue fee, 37 C.F.R. § 1.705(b), which is due no later than three months after the mailing of the Notice of Allowance. A151 (MPEP § 1306). If not timely filed, the ability to seek PTO reconsideration of this A Delay calculation is waived. *See* 37 C.F.R. § 1.705(d).

By necessity, there is a second opportunity to seek agency reconsideration of PTA in a petition to the PTO to address errors in the PTA calculation that do not occur until the PTO actually issues the patent reflecting the agency's final PTA determination. S*ee* A149 (*PTA Calculation* at 2). In other words, because B Delay cannot be determined until the patent issues, the calculation of B Delay, as well as the calculation of the A Delay/B Delay overlap, if any, is not ripe for PTO reconsideration prior to issuance of the patent. *See* A149. Accordingly, any request for agency reconsideration that implicates or depends upon the PTO's

16

calculation of B Delay is timely only if filed within two months of the date of patent issuance. 37 C.F.R. § 1.705(d).

For a number of the Novartis Patents, Novartis filed a timely request for administrative reconsideration within two months after the issuance of each of these patents, as required by 37 C.F.R. § 1.705(d). Each request for reconsideration raised the <u>Wyeth</u> Claim and/or the RCE Claim, as appropriate, and demonstrated that under a correct interpretation of the statute, Novartis would be entitled to additional PTA for the patent at issue. In each case, however, the PTO either applied its incorrect interpretation of Section 154(b) and denied reconsideration or failed to consider the request at all. Under these circumstances, Novartis had no viable avenue of redress other than to appeal the PTA determinations for the Novartis Patents through several federal lawsuits that subsequently were consolidated.

At all times relevant to the Novartis Patents, Section 154 also provided applicants a right to judicial review. The relevant provision stated that:

> An applicant dissatisfied with a determination made by the Director under paragraph (3) shall have remedy by a civil action against the Director filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent. Chapter 7 of title 5 shall apply to such action. Any final judgment resulting in a change to the period of adjustment of the patent term shall be served on the Director, and the Director shall thereafter alter the term of the patent to reflect such change.

35 U.S.C. § 154(b)(4)(A) (2010). The reference to "Chapter 7 of title 5" is an incorporation by reference of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706.

## SUMMARY OF THE ARGUMENT

Novartis' assertion of its RCE Claim and its Wyeth Claim with respect to the Novartis Patents is timely. As a threshold matter, the 180-day limitations period set forth in Section 154(b)(4)(A) plainly and unambiguously applies only to a determination of PTA by the PTO under "paragraph (3)," *i.e.*, 35 U.S.C. § 154(b)(3), which governs a *pre-issuance* PTA determination made in conjunction with a Notice of Allowance. Because the PTA determinations being contested by Novartis were made only in connection with the *issuance* of these patents, the six-year statute of limitations in 28 U.S.C. § 2401(a), as opposed to the 180-day limitations period in Section 154(b)(4)(A), is applicable. Such an interpretation is consistent with Congressional intent and mirrors the PTO's own regulations which provide for two separate statutes of limitation, each with its own unique duration, depending upon whether reconsideration is sought for a pre-issuance PTA determination or an issuance PTA determination.

In the alternative, if the 180-day limitations period in Section 154(b)(4)(A) governs, that period should be tolled from this Court's decision in *Wyeth* with regard to the Wyeth Claim, and from the November 2012 summary judgment

18

ruling in *Exelixis, Inc. v. Kappos*, with respect to the RCE Claim. Not only is this claim processing rule presumptively tollable, but the District Court concluded that this statute of limitations is susceptible to tolling. Furthermore, the 180-day limitations period should be equitably tolled because Novartis reasonably relied to its detriment upon and was lulled into inaction by the consistent and unwavering official statements of the PTO for over a decade denying the viability of the RCE Claim and the <u>Wyeth</u> Claim.

Finally, Novartis' claim under the Takings Clause of the Fifth Amendment is timely because it was filed within six years of issuance of each of the Novartis Patents. The 180-day limitations period in Section 154(b)(4)(A) is inapplicable here. Furthermore, because the parties had an opportunity to address this claim on the merits below, there are no critical facts in dispute, and judicial economy and the economy of the parties would be furthered, the Court should rule upon the merits of this claim. It is clear that not only patents, but also patent term, is Constitutionally-protected property, and that the PTO's deprivation of patent term as to each of the Novartis Patents has amounted to a taking of the entirety of the economically beneficial use of this property.

Accordingly, the District Court's dismissal of the RCE Claim and the <u>Wyeth</u> Claim on the grounds of timeliness should be reversed, and the Novartis Patents

should be remanded to the PTO for recalculation of PTA in accordance with the principles embodied in the RCE Claim and in the <u>Wyeth</u> Claim.

## ARGUMENT

This Court reviews a grant of summary judgment by a district court without deference. *Wyeth*, 591 F.3d at 1369. Summary judgment is appropriate only if the Court determines that there "is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). Because there are no genuine disputes of material fact in this case, this Court need only decide the questions of law determined by the District Court.

## I. THE DISTRICT COURT ERRED IN CONSTRUING THE 180-DAY STATUTE OF LIMITATIONS OF 35 U.S.C. § 154(B)(4)(A) TO BE APPLICABLE TO NOVARTIS' CLAIMS

The 180-day limitations period embodied in Section 154(b)(4)(A) is not applicable to Novartis' claims. The District Court's erroneous statutory interpretation to the contrary is reviewed *de novo*. *Wyeth*, 591 F.3d at 1369.

Novartis' claims in this case challenge the PTA determination that accompanied the issuance of each of the Novartis Patents. Section 154(b)(4)(A), however, applies only to *pre*-issuance determinations of PTA, and thus has no bearing on Novartis' challenge to the PTA determination at patent issuance. The meaning of this statute is clear and unambiguous, and its plain language cannot be

ignored.  Accordingly, Novartis has timely raised its _Wyeth_ Claim and its RCE

Claim as to the Novartis Patents.

**A.    The Plain Meaning of Section 154(b)(4)(A) Limits Its Application to a PTA Determination Made in Conjunction with a Notice of Allowance**

There are two fundamentally different types of PTA determinations made

during the period of examination of a patent application.  On the one hand, the

preliminary PTA determination accompanies a Notice of Allowance advising the

applicant that patent issuance is forthcoming ("Pre-Issuance PTA Determination").

On the other hand, the final PTA determination occurs only upon actual issuance

of the patent ("Issuance PTA Determination").

A  Pre-Issuance  PTA  Determination,  given  its  occurrence  before  the

completion of the patent prosecution process, is necessarily limited in the scope of

PTA issues that it is able to address.  Indeed, because the patent has not yet issued,

the Pre-Issuance PTA Determination cannot provide the appropriate amount of B

Delay.  This, in turn, forecloses the ability of the Pre-Issuance PTA Determination

to resolve any issues _impacted by_ B Delay, including the A Delay/B Delay overlap.

Thus, the Pre-Issuance PTA Determination can address only A Delay.

The  Issuance  PTA  Determination,  by  comparison,  is  comprehensive.   It

occurs contemporaneous with issuance of the patent and, therefore, is made with

the  benefit  of  all  the  necessary  information.    At  this  stage,  B  Delay  can  be

21

ascertained because the date of issuance is definitive. With this date, the PTO can appropriately determine whether the patent issued within three years of the filing of its initial application, and the extent to which any B Delay overlaps with any A Delay. Accordingly, the Issuance PTA Determination is the final pronouncement of PTA by the PTO, and it does not occur until grant of the patent. *Bristol-Myers Squibb Co. v. Kappos*, 891 F. Supp. 2d 135, ___, 2012 U.S. Dist. LEXIS 134299 at *12 (D.D.C. 2012) ("Although notice of the patent term adjustment is provided to the applicant before the grant of the patent," the PTA determination "is not finalized until the patent is granted."); *see also* 37 C.F.R. § 1.705(d)

In this case, Novartis is not challenging the PTO's calculation of A Delay as to any of the Novartis Patents. Rather, Novartis' PTA challenge implicates only the impact of filing an RCE upon the accrual of B Delay and the appropriate A Delay/B Delay overlap calculation for the Novartis Patents, all of which is exclusively within the realm of the Issuance PTA Determination.

Section 154(b)(4)(A) simply did not apply to Novartis' challenge to its Issuance PTA Determinations. By its own terms, Section 154(b)(4)(A) clearly and unequivocally addressed only a Pre-Issuance PTA Determination. Section 154(b)(4)(A), in pertinent part, provided:

> [a]n applicant dissatisfied with *a determination made by the Director under paragraph (3)* shall have remedy by a civil action against the Director filed in the United States District

22

Court for the District of Columbia within 180 days after the
grant of the patent.

(emphasis added).  The reference to "paragraph (3)" unquestionably incorporated

by reference 35 U.S.C. § 154(b)(3).

But the procedures contained within 35 U.S.C. § 154(b)(3) did not, by their

unequivocal terms, govern all PTA determinations by the PTO.  The key operative

language was contained within subparagraph (3)(B)(i), which stated:

> Under the procedures established under subparagraph (A), the
> Director shall make a determination of the period of any patent
> term adjustment under this subsection, and *shall transmit a
> notice of that determination with the written notice of
> allowance* under section 151.

35 U.S.C. § 154(b)(3)(B)(i) (emphasis added).  By referencing only a PTA

determination made in conjunction with a Notice of Allowance, subparagraph

(3)(B)(i) clearly excluded Issuance PTA Determinations.

Paragraph (3)(D) reinforced that 35 U.S.C. § 154(b)(3), and by extension

Section 154(b)(4)(A), applied only to a Pre-Issuance PTA Determination.   It

provided as follows:

> The Director shall proceed to grant the patent *after completion
> of the Director's determination of a patent term adjustment
> under the procedures established under this subsection*,
> notwithstanding any appeal taken by the applicant of such
> determination.

35 U.S.C. § 154(b)(3)(D) (emphasis added).  In addition to perpetuation of the

limitation to a PTA determination under subsection (b)(3), the reference to an

appeal of a PTA determination is instructive. The only appeal of a PTA determination that can be accomplished by an applicant prior to issuance of the patent is an appeal of a Pre-Issuance PTA Determination. In promulgating Section 154(b)(4)(A), Congress clearly anticipated judicial challenges to pure A Delay PTA determinations prior to patent issuance, and imposed a short 180-day deadline upon an applicant for raising such an unorthodox challenge.

The language of 35 U.S.C. § 154(b)(3) is narrowly limited to a PTA determination made under this subsection. The only PTA determination referenced throughout the entirety of 35 U.S.C. § 154(b)(3) is a Pre-Issuance PTA Determination made at the time of the mailing of the Notice of Allowance. Accordingly, it is clear that the 180-day limitations period of Section 154(b)(4)(A), which invokes Section 154(b)(3), specifically encompasses solely the Pre-Issuance PTA Determination, but not the Issuance PTA Determination that Novartis is challenging as to each of the Novartis Patents. Therefore, under the plain language of the statute, Section 154(b)(4)(A) simply does not govern Novartis' claims.

### B. Applying Section 154(b)(4)(A) to an Issuance PTA Determination Constitutes Improper Statutory Construction and Frustrates Congressional Intent

Stretching Section 154(b)(4)(A) to apply to a challenge to an Issuance PTA Determination would violate the traditional canons of statutory construction. It is well established under the laws of statutory construction that the Court must "look

to the express language of the statute to determine its meaning." *Reid v. Dept. of Commerce*, 793 F.2d 277, 281 (Fed. Cir. 1986) (citing *United States v. Turkette*, 452 U.S. 576, 580 (1981)).  As the Supreme Court has noted:

> [I]n interpreting a statute a court should always turn to one, cardinal canon before all others.  We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  In instances of clear statutory language, "[t]he function of the court is then limited to enforcing the statute according to its terms."  *Reid*, 793 F.2d at 281.

It is axiomatic that "absent ambiguity or unreasonable result, the literal language of the statute controls and resort to legislative history is not only unnecessary but improper."  *United States v. Lin*, 101 F.3d 760, 765-66 (D.C. Cir. 1996) (internal citations omitted); *see also United States v. Cotton*, 760 F. Supp. 2d 116, 123 (D.D.C. 2011) ("[R]ebutting the presumption created by clear language is onerous, and the proponent must show either that, as a matter of historical fact, Congress did not mean what it appears to have said, or that, as a matter of logic and statutory structure, it almost surely could not have meant it.") (citations omitted)).

Section 154(b)(4)(A) is not in the least ambiguous.  It is clear, on its face, that Section 154(b)(4)(A) applies only to a Pre-Issuance PTA Determination that

accompanies the Notice of Allowance because that is the only type of PTA determination identified in the cross-referenced subsection (b)(3). Courts "generally presume[] that Congress acts intentionally and purposely in the disparate inclusion or exclusion" of particular language. *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (quoting *Bates v. United States*, 522 U.S. 23, 29-30 (1997)). "Judges do not read between the lines when a statute's text is clear and its structure is coherent." *United States v. Head*, 552 F.3d 640, 643 (7th Cir. 2009) (citing *Jaskolski v. Daniels*, 427 F.3d 456, 461-64 (7th Cir. 2005)).

Any construction of Section 154(b)(4)(A) other than that offered by Novartis would subvert the will of Congress and amount to judicial redrafting. Congress' purposeful and explicit limitation in Section 154(b)(4)(A) to a Pre-Issuance PTA Determination through incorporation of subsection (b)(3) by reference must be respected, and cannot be ignored. To do otherwise would render Congress' deliberate inclusion of the cross reference to subsection 154(b)(3) as superfluous, and thus violate another traditional canon of statutory construction. *See*, *e.g.*, *Conn. Nat'l Bank*, 503 U.S. at 253.

This Congressional intent also is evident from recent amendments to 35 U.S.C. § 154(b). On January 14, 2013, President Obama signed into law H.R. 6621 which revises 35 U.S.C. § 154(b)(3)(B)(i) & (b)(4)(A). In totality, these revisions limit the PTO's obligation to make only one PTA determination for a

patent, provide the PTO the discretion to make that PTA determination at any point on or before the date of patent issuance, permit the patent applicant one opportunity to request PTO reconsideration of that PTA determination, specify that the 180-day statute of limitations for seeking judicial review in Section 154(b)(4)(A) now begins to run as of the date of the PTO's decision on the PTA reconsideration request, and dictate that judicial review pursuant to Section 154(b)(4)(A) is the exclusive remedy for challenging the PTA determination of the PTO. *See* 35 U.S.C. § 154(b)(3)(B)(i) & (b)(4)(A) (2013).

These amendments fundamentally alter the prior rigid dichotomy between Pre-Issuance PTA Determinations and Issuance PTA Determinations. Indeed, the reference to Notice of Allowance PTA determinations has been excised from the cross-referenced subsection (b)(3):

> Under the procedures established under subparagraph (A), the Director shall make a determination of the period of any patent term adjustment under this subsection, and shall transmit a notice of that determination ~~with the written notice of allowance under section 151~~ *no later than the date of issuance of the patent*.

35 U.S.C. § 154(b)(3)(B)(i) (2013). The practical effect of this change, in conjunction with the additional statutory revisions, is that all PTA determinations, not just those transmitted with a Notice of Allowance, are now subject to the exclusive remedy of 35 U.S.C. § 154(b)(4)(A) with its 180-day limitations period.

These revisions to 35 U.S.C. § 154(b)(3)(B)(i) & (b)(4)(A) would not have been necessary if the pre-amendment language had subjected both Pre-Issuance PTA Determinations and Issuance PTA Determinations to the 180-day deadline. By making such changes, Congress has acknowledged its original intent that Section 154(b)(4)(A) was a non-exclusive remedy that applied only to Pre-Issuance PTA Determinations, and that applicants were free to seek review of Issuance PTA Determinations under the APA. Because a literal application of the pre-existing language of 35 U.S.C. § 154(b)(3)(B)(i) & (b)(4)(A) not only makes logical sense, but also comports with the unequivocal intent of Congress, the Court should find that the 180-day statute of limitation in 35 U.S.C. § 154(b)(4)(A) has no bearing upon the Issuance PTA Determinations challenged by Novartis.

### C.    Proper Construction of Section 154(b)(4)(A) Is Consistent with and Complements the PTA Regulatory Framework

Limiting Section 154(b)(4)(A) to a Pre-Issuance PTA Determination does not lead to an unreasonable or unworkable result. While a legal challenge to a Pre-Issuance PTA Determination is subject to the 180-day limitations period in Section 154(b)(4)(A), the ability to raise a legal challenge to an Issuance PTA Determination is not open-ended or indeterminate. An appeal of an Issuance PTA Determination is subject to review pursuant to the APA under its imputed six-year statute of limitations. 28 U.S.C. § 2401(a).

28

It is well established that decisions by the PTO routinely are subject to APA review. *In re Andrew P. Chapman*, 595 F.3d 1330, 1336-37 (Fed. Cir. 2010) ("The Patent and Trademark Office ('PTO') is governed by the Administrative Procedure Act ('APA'), and PTO decisions are reviewed under the APA standard"). This is true even in the patent term arena. *The Arnold P'ship v. Dudas*, 362 F.3d 1338, 1339 (Fed. Cir. 2004) (adjudicating plaintiff's claim under the APA for a patent term extension); *Wyeth Holdings Corp. v. U.S. Dept. of Heath and Humans Servs.*, 607 F. Supp. 2d 25, 27 (D.D.C. 2009) (same). Therefore, there is no sound basis for concluding that it is unreasonable to subject an Issuance PTA Determination challenge to review under the APA.

Furthermore, adherence to the plain language of Section 154(b)(4)(A) does not render its function absurd or obsolete. Section 154(b)(4)(A) remains in effect as it was intended: to govern any challenge to a Pre-Issuance PTA Determination implicating only straightforward determinations of A Delay. Correspondingly, any challenges to a Pre-Issuance PTA Determination must be filed within the narrow window of 180 days. Given that the calculations in a Pre-Issuance PTA Determination are more limited and easily determinable than those at stake in an Issuance PTA Determination, it is logical to subject these claims to a relatively short statute of limitations.

ME1 15341255v.1

The calculations at issue in an Issuance PTA Determination, on the other hand, are more complex and convoluted, and therefore warrant exclusion from Section 154(b)(4)(A) and application of the longer six-year statute of limitations provided under the APA. *See* A146 (PTO, *Response to Wyeth Decision: PPAC Patent Term Adjustment Recommendations* (Mar. 10, 2010)) (Patent Commissioner Stoll advising that retroactivity of the benefits of *Wyeth* to all affected patents regardless of dates of issuance was rejected, in part, because "a [final] patent term adjustment determination requires a complex calculation."). Accordingly, Section 154(b)(4)(A) recognizes the differences between the narrow and precise issues raised in a Pre-Issuance PTA Determination challenge and the more complicated and unwieldy issues raised in an Issuance PTA Determination challenge, and affords patentees appropriate time to appeal in light of the relative difficulty of addressing each.

Significantly, the PTO's own regulations recognize the same sort of bifurcated treatment of Pre-Issuance PTA Determination and Issuance PTA Determination challenges evident in 35 U.S.C. § 154(b). 37 C.F.R. § 1.705 provides two opportunities for reconsideration of a PTA calculation before the PTO. The first opportunity is a reconsideration of a Pre-Issuance PTA Determination made in conjunction with the Notice of Allowance. *See* 37 C.F.R. § 1.705(b). These reconsideration petitions must be filed "no later than the payment

of the issue fee but may not be filed earlier than the date of mailing of the notice of allowance." *Id.* The second opportunity is a reconsideration of an Issuance PTA Determination in conjunction with the issuance of a patent. *See* 37 C.F.R. § 1.705(d). These reconsideration petitions must be filed "within two months of the date the patent issued." *Id.*

The PTO's own regulations thus provide for two separate statutes of limitation, each with its own unique duration, depending upon whether reconsideration is sought for a Pre-Issuance PTA Determination or an Issuance PTA Determination. In fact, any issues that were raised or could have been raised in the reconsideration petition for a Pre-Issuance PTA Determination are waived and not reviewable in a reconsideration petition for an Issuance PTA Determination. *Id.* In other words, the PTO not only consciously and deliberately treats challenges to a Pre-Issuance PTA Determination and an Issuance PTA Determination differently, but does so in a manner that mirrors their treatment under the plain meaning of Section 154(b)(4)(A).

## D. *Janssen Pharmaceutica, N.V. v. Kappos* **Is neither Controlling nor Persuasive**

The recent district court decision in *Janssen Pharmaceutica, N.V. v. Kappos*, 844 F. Supp. 2d 707 (E.D. Va. 2012), is the only other judicial effort to date that addresses this narrow issue of the proper construction of the 180-day deadline in Section 154(b)(4)(A), yet unfortunately does so in a superficial manner that yields

31

an indefensible result. For good reason, no court other than the District Court has cited *Janssen* for any proposition of law. *Janssen* is not controlling legal authority in this Court, including because its ruling as to the scope of the 180-day limitations period is mere dicta. Furthermore, *Janssen* is not even persuasive because the *Janssen* court failed to engage in any meaningful or substantive analysis of the relevant statutory construction and its decision as to the application of the 180-day deadline in Section 154(b)(4)(A) was not well reasoned.

Janssen is the owner and assignee of U.S. Patent No. 7,741,356 (the "'356 Patent"). *Id.* at 708. Janssen challenged the PTA determination accompanying the Notice of Allowance for the '356 Patent by filing a request for reconsideration, which was dismissed by the PTO prior to issuance of the '356 Patent. *Id.* at 710. After the '356 Patent issued, Janssen successively filed, and the PTO successively denied, two petitions to review the dismissal of its original reconsideration request of the Pre-Issuance PTA Determination and, further, to seek reconsideration of the denial of review. *Id.* at 711. A few days after the PTO's denial of the second and final petition, yet over a year after issuance of the '356 Patent, Janssen filed its district court complaint appealing the PTO's PTA determination. *Id.*

Despite having filed its civil complaint more than 180 days after issuance of the '356 Patent, Janssen contended that the filing of the complaint was timely because its post-issuance efforts to revive its original reconsideration request of the

Pre-Issuance PTA Determination permitted invocation of the APA's six-year statute of limitations. *Id.* at 713. Without any significant consideration of the appropriate statutory construction, the *Janssen* court ruled that any challenge to a PTA determination by the PTO – regardless of when it was made or the context in which it was made – is governed by the 180-day deadline in Section 154(b)(4)(A). *Id.* Nevertheless, the *Janssen* court denied the PTO's motion to dismiss on that basis and, instead, merely transferred the case from the Eastern District of Virginia to the District of Columbia. *Id.* at 716.

First and foremost, *Janssen* is not controlling authority. In order to resolve the case, the *Janssen* court need only have narrowly ruled that Janssen's Pre-Issuance PTA Determination was required to be appealed to the district court within 180 days of the issuance of the '356 Patent, and that Janssen's failure to do so rendered the filing of the complaint untimely. The overbreadth of the *Janssen* court's ruling was inappropriate and unnecessary to resolve the legal dispute before that court and, thus, constitutes dicta. *See Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1361 (Fed. Cir. 2012). Moreover, despite its ruling on the timeliness issue, the *Janssen* court refused to dismiss the complaint as untimely, and transferred the case to the District of Columbia. Thus, the *Janssen* court's ruling on the application of the limitations period in Section 154(b)(4)(A) is dicta not only due

33

to its excessive scope, but also because it was entirely superfluous and irrelevant to that court's resolution of the case.

This lack of precedential value is compounded by the complete absence of any persuasive value. In making such a sweeping ruling, the *Janssen* court critically failed to recognize or draw any distinction between Pre-Issuance PTA Determinations and Issuance PTA Determinations. While the *Janssen* court did acknowledge the PTO's agreement with Janssen that Section 154(b)(3) refers only to pre-issuance procedures, *Janssen*, 844 F. Supp. 2d at 713, it failed to appreciate that Pre-Issuance PTA Determinations and Issuance PTA Determinations are treated differently under PTA procedural rules. In particular, the *Janssen* court's analysis was flawed because it did not consider or address that the PTO's own PTA reconsideration regulations had instituted two distinct limitation periods for Pre-Issuance PTA Determination and Issuance PTA Determination challenges that mirrored their treatment under the plain language of Section 154(b)(4)(A). Furthermore, the *Janssen* court lacked the benefit of the clear expression of Congressional intent concerning the appropriate interpretation of 35 U.S.C. § 154(b)(3)(B)(i) & (b)(4)(A) as reflected by the recent amendments to the statutory language, including the lack of exclusivity of Section 154(b)(4)(A) as a remedy for challenging a PTA determination.

Indeed, the *Janssen* court's failure to appreciate the distinction between Pre-Issuance PTA Determinations and Issuance PTA Determinations makes that court's ruling as to the scope of Section 154(b)(4)(A) readily and easily distinguishable.  The *Janssen* court concluded that Janssen was seeking recourse to the general six-year APA statute of limitations even though it was preempted by the more precise 180-day deadline in Section 154(b)(4)(A), citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820 (1976); *Block v. North Dakota*, 461 U.S. 273 (1983); and *Franchi v. Manbeck*, 972 F.2d 1283 (Fed. Cir. 1992).  Because Novartis is contesting only Issuance PTA Determinations – as opposed to the Pre-Issuance PTA Determination challenged by Janssen – the 180-day statute of limitations in Section 154(b)(4)(A) is not implicated and, thus, is not supplanted by the six-year APA deadline.  For all these reasons, the *Janssen* court's ruling as to the universality of the application of the limitations period in Section 154(b)(4)(A) to PTA determinations is poorly reasoned and unworthy of reliance.

Given that the language of Section 154(b)(4)(A) is clear, and because adherence to that clear language comports with Congressional intent and leads to a reasonable result consistent with the PTO's existing practice governing bifurcation of reconsideration of a Pre-Issuance PTA Determination and an Issuance PTA Determination, the plain meaning of Section 154(b)(4)(A) controls.  Because Novartis is exclusively challenging the Issuance PTA Determination as to each of

the Novartis Patents, the 180-day statute of limitations is inapplicable. Instead, Novartis' claims are timely under the APA because they were filed within six years of issuance of each of the Novartis Patents. Given that the PTO's determination of patent term for each of the Novartis Patents was contrary to the controlling decision in *Wyeth* and/or an improper determination of the effect of filing an RCE on the accrual of B Delay, it is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law as per 5 U.S.C. § 706(2)(A) and, therefore, should be reversed and remanded to the PTO for a proper PTA calculation.

## II.    IN THE ALTERNATIVE, THE DISTRICT COURT ERRED IN RULING THAT THE 180-DAY STATUTE OF LIMITATIONS OF 35 U.S.C. § 154(B)(4)(A) SHOULD NOT BE TOLLED

Novartis' claims also remain timely under the doctrine of equitable tolling. A statute of limitations, such as Section 154(b)(4)(A), will be equitably tolled as long as (a) the statute is susceptible to tolling, and (b) it would be equitable to apply such tolling under the circumstances of the particular case. Even if Section 154(b)(4)(A) is applicable to Novartis' claims, both conditions for tolling that statute are present here. Section 154(b)(4)(A) is a non-jurisdictional statute of limitations that can and should be tolled as to both the filing of the Wyeth Claim and the RCE Claim as to the Novartis Patents. Where, as here, the facts are undisputed, a determination of whether equitable tolling is warranted constitutes a

question of law that is reviewed *de novo*.  *Arctic Slope Native Ass'n v. Sebelius*, 699 F.3d 1289, 1294-95 (Fed. Cir. 2012).

## A.    Section 154(b)(4)(A) Is Susceptible to Equitable Tolling

The Supreme Court recently confirmed that a non-jurisdictional statute of limitations is subject to a "'rebuttable presumption' in *favor* 'of equitable tolling.'" *Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549, 2560 (2010) (emphasis in original) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)); *see also Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling.") (internal quotations omitted); *Bull S.A. v. Comer*, 55 F.3d 678, 681 (D.C. Cir. 1995) ("A plaintiff who pleads and proves equitable reasons that excuse his failure to meet a statutory deadline is entitled to tolling of the deadline.") (internal quotations omitted).

It equally is without question that equitable tolling applies to suits against the United States, and not just against private parties.  *Irwin*, 498 U.S. at 95-96 ("[T]he same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.").  Indeed, equitable tolling previously has been available in suits against the Commissioner of the PTO.  *Bull S.A.*, 55 F.3d at 682.

37

Moreover, recent Supreme Court jurisprudence urges a narrow view of what counts as "jurisdictional":

> Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term. We have urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction . . . . Other rules, even if important and mandatory, we have said, should not be given the jurisdictional brand.

*Henderson v. Shinseki*, __ U.S. __, 131 S. Ct. 1197, 1202-03 (2011) (internal citations omitted). Notably, mere "claim processing rules," "rules that seek to promote the orderly process of litigation by requiring that the parties take certain procedural steps at certain specified times," are not jurisdictional. *Id.* at 1203 (describing the 120-day filing deadline to seek review of a decision by the Department of Veterans Affairs as a "quintessential claim-processing rule[]"). A statute will not be considered jurisdictional unless "Congress has 'clearly state[d]' that the rule is jurisdictional." *Sebelius v. Auburn Reg. Med. Ctr.*, ___ U.S. ___, ___, 133 S. Ct. 817, 824 (2013) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006)).

Acknowledging the Supreme Court's guidance as to the narrow construction of statutes of limitations as "jurisdictional," the District Court determined that

> it is perhaps more prudent to conclude that § 154(B)(4)(A) should be viewed as a 'claim processing rule' – one that "seek[s] to promote the orderly process of litigation by

> requiring that the parties take certain procedural steps at certain specified times, *Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011), and therefore, it is entitled to a 'rebuttable presumption in favor of equitable tolling.'" *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (internal quotation marks omitted).

A14 (Opinion at 14). Nevertheless, the District Court concluded that it "need not resolve this knotty question" because it found that equitable tolling was unwarranted in this case. A15 (Opinion at 15). However, the District Court's actions speak louder than its words.

When considering another legal theory raised by Novartis in its summary judgment motion, the District Court *de facto* concluded that Section 154(b)(4)(A) was a non-jurisdictional statute of limitations that is presumptively tollable. The District Court adopted rulings by the district court in *Bristol-Myers Squibb v. Kappos*, 841 F. Supp. 2d 238 (D.D.C.), *motion for reconsideration denied*, 891 F. Supp. 2d 135 (D.D.C. 2012), which was faced with arguments identical to those raised before the District Court as to the ordinary tolling of Section 154(b)(4)(A), *i.e.*, tolling from the completion of PTO administrative reconsideration of a PTA determination. A12-13 (Opinion at 12-13). Significantly, the District Court cited with approval the conclusion by the *Bristol-Myers Squibb* court that "'Congress affirmatively intended for the tolling rule to apply to judicial review of patent term adjustment determinations[,]' [and that] nothing about § 154(b)(4)(A) 'direct[s]

this Court to take any action inconsistent with the normal tolling rule.'"    A13

(Opinion at 13 (internal citations omitted)).

In reliance upon the analysis and conclusions of the *Bristol-Myers Squibb*

court, the District Court ruled in favor of Novartis and applied ordinary tolling as

to one asserted patent.    A13.    By tolling the 180-day statute of limitations on

ordinary tolling grounds, the District Court must have determined that Section

154(b)(4)(A) was tollable in the first instance.    *See Auburn Reg. Med. Ctr.*, __ U.S.

at __, 133 S. Ct. at 824 (only a non-jurisdictional limitations period can be

extended by a court).    Such a determination of that susceptibility is equally

relevant to, and, indeed, dispositive of the District Court's conclusion that Section

154(b)(4)(A) is susceptible to equitable tolling.

## B.    Section 154(b)(4)(A) Should Be Equitably Tolled

Not only can Section 154(b)(4)(A) be equitably tolled, it should be equitably

tolled in this case as to Novartis' <u>Wyeth</u> Claim and RCE Claim.    Equitable tolling

is available to a petitioner who has been diligently pursuing its rights, but some

extraordinary circumstance stood in the way and prevented timely filing.    *Holland*,

__ U.S. at __, 130 S. Ct. at 2562.    Such an inquiry is made on a "case-by-case"

basis in a manner that "emphasiz[es] the need for flexibility," avoids the

application of "mechanical rules," and "relieve[s] hardships which, from time to

time, arise from a hard and fast adherence to more absolute legal rules, which, if

strictly applied, threaten the evils of archaic rigidity." *Id.* at 2563 (internal quotations and citations omitted).   Thus, while this Court may "draw upon decisions made in other . . . cases for guidance," *id.* at 2553, the ultimate decision must be made "with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* at 2563.

As a general matter, "[e]quitable tolling may be applied to toll a statute of limitations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Andrews v. Principi*, 351 F.3d 1134, 1137-38 (Fed. Cir. 2003) (quoting *Irwin*, 498 U.S. at 96); *United States v. McDade*, 699 F.3d 499, 505 (D.C. Cir. 2012) (same); *Commc'ns Vending Corp. of Arizona v. FCC*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (same).   Equitable principles favor tolling where, for example, a defendant engaged in "affirmative misconduct," *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984), or "misled [a plaintiff] about the running of a limitations period." *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997).

A defendant's conduct can cause a plaintiff to be misled in a manner that justifies equitable tolling. *Id.*; *see also Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 616 (10th Cir. 1988) (EEOC director unable to meet with and assist in the

filing of charges by plaintiffs alleging age discrimination until after the 180-day limitations period had expired). Such conduct includes that which has the effect of being "lulled into inaction by [a] past employer, state or federal agencies, or the courts." *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984) (quoting *Carlile v. S. Routt Sch. Dist. RE 3–J*, 652 F.2d 981, 986 (10th Cir. 1981)).

Likewise, equitable tolling is warranted where a plaintiff reasonably relied upon the statements of a government official. *Bowden*, 106 F.3d at 438; s*ee also Bull S.A.*, 55 F.3d at 682 (deadline to renew federal trademark registration equitably tolled because plaintiff relied on an "official government document, published under the signature and Seal of the Commissioner" that stated a later deadline for the renewal application); *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (plaintiff in Title VII suit against the government who alleged that he failed to file a timely administrative complaint in reliance on assurances from a government office that the officer was attempting to resolve the alleged discrimination "clearly pleaded equitable considerations which may excuse non-compliance with the filing requirement").

The specific circumstances of this case demonstrate that equitably tolling the 180-day statute of limitations in Section 154(b)(4)(A) for Novartis' <u>Wyeth</u> Claim is warranted. The PTO's pre-*Wyeth* policy in calculating A Delay/B Delay overlap was longstanding and without exception, stretching back for over a decade and

42

continuing unabated even in light of the district court decision in *Wyeth v. Dudas*, 580 F. Supp. 2d. 138 (D.D.C. 2008).  Indeed, despite the district court's definitive and well-reasoned ruling against the agency, the PTO continued to disregard or deny PTA reconsideration in petitions premised on the *Wyeth v. Dudas* decision. *See*, *e.g.*, A178-85 (*Application for Reconsideration of Patent Term Adjustment for U.S. Patent No. 7,446,175* (Nov. 26, 2008) (never ruled upon)); A186-95 (*Decision on Request for Reconsideration of Patent Term Adjustment for U.S. Patent No. 7,470,792* (June 19, 2009)).  Thus, until this Court's decision in *Wyeth* and the PTO's decision to seek no further appellate review, Novartis simply had no reason to believe that it could obtain a different calculation of A Delay/B Delay overlap than that which the PTO granted at issuance of the relevant Novartis Patents under its flawed pre-*Wyeth* interpretation.  Novartis reasonably believed it would have been futile to file a lawsuit appealing the PTA determination for the affected Novartis Patents on the basis of A Delay/B Delay overlap until the landmark *Wyeth* ruling at the earliest.

Likewise, equitable tolling is justified for Novartis' RCE Claim.  It was not until Abbott Biotherapeutics Corp. ("Abbott") filed its complaint in the District Court for the District of Columbia styled *Abbott Biotherapeutics Corp. fka Facet Biotech Corp. v. Kappos*, Case No. 1:10-cv-01853 (the "Abbott Lawsuit"), that Novartis became aware it may have a viable claim for PTA deprivation based upon

the PTO's refusal to grant B Delay for any of the affected Novartis Patents subsequent to the filing of an RCE. But the first court to recognize the viability of the RCE Claim did so only recently, *Exelixis, Inc. v. Kappos*, ___ F. Supp. 2d ___, 2012 WL 5398876 (E.D. Va. Nov. 1, 2012), which was followed in quick succession two weeks later by the District Court's favorable ruling on the RCE Claim. A24 (Opinion at 24). Thus, Novartis was in the position of being hyper-diligent about pursuing its RCE Claim, doing so even before there was any judicial ruling on the merits. Indeed, despite Novartis seeking PTA reconsideration on this basis while its case was pending before the District Court, the PTO continued to deny PTA reconsideration petitions raising the RCE Claim. *See*, *e.g.*, A207-16 (*Decision on Request for Reconsideration of Patent Term Adjustment for U.S. Patent No. 7,968,518* (Aug. 25, 2011)); A217-24 (*Decision on Request for Reconsideration of Patent Term Adjustment for U.S. Patent No. 7,973,031* (Oct. 3, 2011)).

Novartis was and had been relying upon the PTO's established and unwavering pattern and practice of improperly calculating PTA with regard to A Delay/B Delay overlap and the accrual of B Delay subsequent to the filing of an RCE. For more than a decade, the PTO consistently misled Novartis as to the viability of the Wyeth Claim and the RCE Claim. Not even the district court's ruling in *Wyeth v. Dudas* deterred the PTO from its tunnel vision. Instead, the

44

PTO lulled Novartis into inaction by repeatedly ignoring or denying PTA reconsideration petitions filed by Novartis and a number of other patentees on *Wyeth* grounds and on the theory underlying the RCE Claim. Novartis "did not and could not know that those adverse decisions had been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge." *Bowen v. City of New York*, 476 U.S. 467, 480-81 (1986).

But the PTO's unequivocal official positions on the interpretation of A Delay/B Delay overlap and the accrual of B Delay after the filing of an RCE were not limited merely to decisions on PTA reconsideration petitions. Rather, these positions were trumpeted in Federal Register notices relating to the imposition and modification of the PTA regime, in official public statements made by PTO representatives on PTA issues, in documents accessible on the PTO website addressing PTA calculation, and in documents filed by the PTO during lawsuits appealing PTA determinations. In a word, they were ubiquitous. Because the PTO was and is the designated authority and presumed subject matter expert on issues related to PTA, Novartis' reliance to its detriment on the steady and uninterrupted barrage of official orthodoxy as to A Delay/B Delay overlap and the accrual of B Delay after the filing of an RCE was eminently reasonable. Thus, Novartis' unique circumstances dictate that equitable tolling of the 180-day limitations period in Section 154(b)(4)(A) is warranted.

The District Court rejected equitable tolling on the basis that a change in law can never amount to an extraordinary circumstance meriting such relief.  A16 (Opinion at 16).  Such a categorical ruling, however, is exactly the type of analysis eschewed by the Supreme Court in *Holland*, which called for a case-by-case inquiry that avoids application of rigid and mechanical rules.  ___ U.S. at ___, 130 S. Ct. at 2563.  The more appropriate consideration is whether the particular circumstances faced by Novartis – including the longstanding and unwavering yet flawed position of the pre-eminent government agency on these issues and a fundamental shift in the law – warrant tolling in *this* instance.  Such a question was not addressed by the District Court.

Nor can it be said that Novartis failed to act with the requisite diligence in refraining from filing suit on its <u>Wyeth</u> Claim and its RCE Claim until recently. "The diligence required for equitable tolling purposes is 'reasonable diligence,' . . . not 'maximum feasible diligence.'" *Holland*, __ U.S. __, 130 S. Ct. at 2565 (internal citations omitted).  Requiring Novartis to have pursued its <u>Wyeth</u> Claim or its RCE Claim in the face of over a decade of PTO intransigence as to the proper interpretation of A Delay/B Delay overlap and the accrual of B Delay after the filing of an RCE would impose an unreasonable burden.  The years of consistent PTO policy, practice and pronouncements touting its flawed pre-*Wyeth* interpretation justifiably led Novartis to believe that it was futile to raise its Wyeth

Claim until the ruling in *Wyeth*. To conclude otherwise would require Novartis to far exceed the threshold of "reasonable diligence." Indeed, with regard to its RCE Claim, Novartis has, by any objective measure, greatly exceeded the required level of diligence because it asserted this claim in the District Court before any court had ruled on the merits of the underlying legal theory.

Accordingly, not only is the 180-day statute of limitations in Section 154(b)(4)(A) susceptible to tolling, Novartis has demonstrated that it is equitable to apply tolling in this particular case as to both its <u>Wyeth</u> Claim and its RCE Claim. Novartis' <u>Wyeth</u> Claim and RCE Claim therefore remain timely even if the 180-day deadline of Section 154(b)(4)(A) is deemed applicable to these claims.

## III. THE DISTRICT COURT ERRED IN DENYING NOVARTIS' CLAIM THAT DEPRIVATION OF PTA FOR THE NOVARTIS PATENTS CONSTITUTES A TAKING WITHOUT JUST COMPENSATION IN VIOLATION OF THE FIFTH AMENDMENT

The nature or scope of a compensable property interest in a takings analysis is a question of law reviewed *de novo*. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1351 (Fed. Cir. 2013). Whether a Fifth Amendment taking of a compensable property interest has occurred is "a question of law based upon factual underpinnings." *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377 (Fed. Cir. 2008) (citing *Stearns Co. v. United States*, 396 F.3d 1354, 1357 (Fed. Cir. 2005)). But where the salient facts are not in dispute, as is the case here,

consideration of the Takings Clause claim becomes a pure question of law subject to *de novo* review.  *Id.*

### A.    Novartis Timely Raised Its Fifth Amendment Claim

The District Court also dismissed Novartis' Fifth Amendment takings claim as untimely because it was not raised within 180 days of the issuance of any of the Novartis Patents as required by Section 154(b)(4)(A).   A27 (Opinion at 27). However, by its terms, Section 154(b)(4)(A) is applicable only to a judicial appeal of a Pre-Issuance PTA Determination, and not to the Issuance PTA Determinations challenged by Novartis.  *See supra*, pp. 22-24.  Thus, it has no applicability here.

In any event, Section 154(b)(4)(A) was not the sole means of relief for a patentee deprived of an accurate PTA calculation.   Again, such Congressional intent is evident from the January 2013 amendments to Section 154 which, for the first time, mandate that judicial review of a PTA determination by the PTO pursuant to Section 154(b)(4)(A) is a patentee's *exclusive* remedy for dissatisfaction with such a determination.  35 U.S.C. § 154(b)(4)(A) (2013).  The only logical reason for Congress to have made such a revision was because judicial review under Section 154(b)(4)(A) previously had been a non-exclusive remedy.

Novartis' Fifth Amendment takings claim is governed by the general six-year statute of limitations for civil actions against the United States.  28 U.S.C. § 2401(a).  It is undisputed that Novartis raised this claim within six years of the

issuance of each of the Novartis Patents.  Accordingly, Novartis' Fifth Amendment takings claim is timely, and the District Court erred by finding to the contrary.

Moreover, this Court should rule on the merits of this Constitutional claim because the parties have been afforded a full and fair opportunity to address the merits of the Constitutional claim below, there are no critical facts in dispute, and judicial economy and the economy of the parties dictate that resolution of this pure question of law is appropriate here and now.  *See Smith v. Jefferson County Bd. of Sch. Comm'rs*, 641 F.3d 197, 205 (6th Cir. 2011) (ruling on procedural due process and immunity questions that were fully briefed before, but not decided by, the district court, stating that "if a district court does not rule on an issue that the parties raised in their summary judgment motions, we may rule on such issues under 28 U.S.C. § 2106 without remanding them, as long as the parties were given a full and fair opportunity to address those issues") (internal citations omitted); *see also Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 13-14 (2001) (although Valdez's claim was not raised below, deciding same because "the parties have argued the matter in their briefs here; and our deciding the matter now will reduce the likelihood of further litigation").

The harm inflicted upon Novartis through the deprivation of patent term rises to the level of a Constitutional violation.  The Novartis Patents, as well as the term of these patents, are Constitutionally-protected property.  By depriving the

Novartis Patents of term to which they are entitled as set forth in Novartis' <u>Wyeth</u> Claim and RCE Claim, the PTO effected a taking of Novartis' property rights in violation of the Takings Clause of the Fifth Amendment.

The Takings Clause prohibits the taking of private property "for public use, without just compensation."  U.S. Const., amend. V., cl. 4.  To analyze a takings claim, this Court employs a two-step analysis that tracks the Constitutional language: (a) whether the plaintiff has a cognizable Fifth Amendment property interest; and, if so, (b) whether the government's action amounted to a compensable taking of that property interest.  *See, e.g., Casitas Mun. Water Dist.*, 708 F.3d at 1348.  The PTO concedes that Novartis was not compensated at all, much less justly, for its deprivation of patent term as to the Novartis Patents.  Thus, Novartis need only establish that the patent term of which it was deprived constitutes "property," and that the PTO's deprivation of that patent term amounts to a "taking" in order to prevail.

### B.    The Term of the Novartis Patents Is Constitutionally Protected Property

The concept of a patent as a thing of value dates back at least as early as the founding of the Republic.  The Constitution granted Congress the power to "promote the Progress of Science . . . by securing for limited Times to . . . Inventors the exclusive Right to their . . . Discoveries.  U.S. Const., art. I, § 8, cl. 8.  A patent evidences not only a specific breadth of protection ("Discoveries"), but

also a defined period within which that protection may be exercised ("limited Times"). Accordingly, a patent by definition is an amalgam of its two constituent parts: its scope and its term.

It is well settled that patents are property. 35 U.S.C. § 261 ("[P]atents shall have the attributes of personal property."); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushi Co.*, 535 U.S. 722, 730 (2002) (a patent "is a property right"); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642 (1999) ("Patents, however, have long been considered a species of property"); *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 186-87 (1933) ("a patent is not, accurately speaking, a monopoly," but rather "[a] patent is property"); *Consol. Fruit-Jar Co. v. Wright*, 94 U.S. 92, 96 (1877) ("A patent for an invention is as much property as a patent for land.").

Furthermore, patents are a form of private property recognized by and protectable under the Takings Clause. *See Hartford-Empire Co. v. United States*, 323 U.S. 386, 415 (1945) ("That a patent is property, protected against appropriation both by individuals and by government, has long been settled."); *James v. Campbell*, 104 U.S. 356, 358 (1881) ("we have no doubt" that the "exclusive property in the patented invention . . . cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land"); *McKeever v. United States*, 14 Ct. Cl. 396,

51

422 (1878) (impermissible to "destroy[] the [exclusive patent] right in whole or in part by appropriating it to the purposes of government without complying with that other condition of the Constitution, the making of 'just compensation'"); *Cammeyer v. Newton*, 94 U.S. 225, 234-35 (1876) (a patent constitutes "[p]rivate property, [that] the Constitution provides, shall not be taken for public use without just compensation"); *United States v. Burns*, 79 U.S. (12 Wall.) 246, 252 (1870) ("the government cannot, after the patent is issued, make use of the improvement any more than a private individual, without license of the inventor or making compensation to him.")

It would be anomalous indeed for patents – a form of intellectual property enshrined in the Constitution – not to be deemed cognizable property under the Fifth Amendment when the Supreme Court has determined that trade secrets are private property secured under the Takings Clause. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003 (1984). In fact, the Supreme Court has held that even less lofty intangible property rights protected by state law enjoy protection from unconstitutional takings. *See, e.g., Armstrong v. United States*, 364 U.S. 40, 44, 46 (1960) (materialman's lien); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 596-602 (1935) (real estate lien); *Lynch v. United States*, 292 U.S. 571, 579 (1934) (valid contracts).

This Court, like the Supreme Court, also has had occasion to analyze Fifth Amendment takings jurisprudence, and conclude that patents constitute property for the purposes of the Takings Clause. *See Zoltek Corp. v. United States*, 464 F.3d 1335, 1336-38 (Fed. Cir. 2006) (Newman, J., dissenting from denial of petition for *en banc* rehearing), *cert. denied*, 551 U.S. 1113 (2007); *Zoltek Corp. v. United States*, 442 F.3d 1345, 1373-78 (Fed. Cir. 2006) (Plager, J., dissenting), *vacated*, 672 F.3d 1309 (Fed. Cir. 2012) (*en banc* rehearing). Accordingly, it is abundantly clear that government taking of a patent is worthy of just compensation under the Fifth Amendment.

However, no court has yet explicitly ruled that patent *term* is a form of Constitutionally-protected property. But if patents are protected property under the Takings Clause, it is unfathomable that patent term is not similarly situated. Patent term is inextricably intertwined with the patent right itself which, in conjunction with the scope of its claims, provides the very value that makes it cognizable property. Indeed, the smallest common denominator of a patent – any patent – is a day of exclusivity, a day in which the patentee can prevent others from infringing the scope of the patent's claims. Generally, this scope, the breadth of the patentee's right to exclude, remains constant throughout the entire term of the patent. Therefore, each day of patent term is the functional equivalent of a patent itself, a veritable patent within a patent ("Day-Long Patent"). This Day-Long

Patent, the basic building block of every issued patent, carries with it the defined scope of protection of the issued patent, yet is viable only for a relatively short period. Like the entirety of an issued patent, a combination of one or more Day-Long Patents – patent term – must be just as cognizable as Constitutionally-protected property.

Judicial support for the notion of patent term as property can be derived from *Michels v. United States*, a recent case before the Court of Federal Claims concerning the expiration of a patent for a failure to pay maintenance fees. 72 Fed. Cl. 426 (Fed. Cl. 2006). In *Michels*, the patentee plaintiff claimed that the premature expiration of her patent amounted to a Fifth Amendment taking. The government moved to dismiss on two grounds. First, the government asserted that the Takings Clause does not apply to legislation requiring the payment of money and, thus, the maintenance fee provision cannot be construed to effect a taking. Second, the government contended that the patent privilege does not exist independent of the fees upon which the privilege is conditioned and, therefore, no property right was taken when the patent expired. *Id.* at 429.

The *Michels* court dismissed plaintiff's claim in light of the firmly established rule that patent rights are conditioned upon the payment of required maintenance fees. *Id.* at 431 ("the Court holds that the expiration of plaintiff's patent did not constitute a taking of any property right held by plaintiff but was

54

rather a result of her failure to meet the requirement upon which her property interest in the patent was conditioned"). Nevertheless, in rejecting the government's first argument, the *Michels* court suggested that plaintiff's taking claim theory is viable:

> The Court does not agree with the Government's contention that the expiration of plaintiff's patent is not a taking because the operative law - the maintenance fee provision - requires the payment of money. The taking alleged by plaintiff is based upon the expiration of her patent, not the taking of her money used to pay maintenance fees. She contends that, by stripping her of her patent privilege, the Government effectively seized property for which compensation should have been provided; * * * [H]ere, plaintiff alleges that her patent – not her money – was taken.

*Id.* at 429-30. *Michels* indicates that a patent supported by proper payment of all maintenance fees *is* a property right, and that the premature expiration of that patent can constitute a taking without just compensation in violation of the Fifth Amendment.

Contrary to the plaintiff in *Michels*, it is undisputed that Novartis has paid all maintenance fees for each of the Novartis Patents. *See* A99 at ¶ 97; A56 (Defendant's Answer to Amended Complaint [D.E. 16 in Case No. 1:11-cv-00659-ESH (consolidated)] at ¶ 128). Furthermore, there is no parallel between the maintenance fee provision and Novartis' alleged failure to satisfy Section 154(b)(4)(A) by seeking judicial review of the PTA determination for the Novartis Patents within 180 days of their issuance. As noted above, *see supra*, pp. 38-40,

Section 154(b)(4)(A) is a mere claim processing rule that does not implicate the foundation or viability of the patent right itself. Thus, the patent term of which Novartis was deprived for each of the Novartis Patents is cognizable property under the Takings Clause of the Fifth Amendment.

## C.    The Deprivation of Term of the Novartis Patents Is a Constitutional Taking

"[G]overnment regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster – and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005). Accordingly, an analysis of a regulatory taking "focuses directly upon the severity of the burden that government imposes upon private property rights." *Id.* at 539. The nature and scope of the taking underlying the claim can either be categorical or non-categorical.

A categorical takings claim occurs when regulations "completely deprive an owner of '*all* economically beneficial us[e]' of [its] property." *Id.* at 538 (quoting *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992) (emphasis in original)); *see also Huntleigh*, 525 F.3d at 1378 n.2. Not surprisingly, "the complete elimination of a property's value is the determinative factor" because it is equivalent to a physical appropriation. *Lingle*, 544 U.S. at 539-40.

Novartis has suffered such a pervasive taking.  The PTO's refusal to provide the Novartis Patents the benefits of increased patent term corresponding with Novartis' <u>Wyeth</u> Claim and RCE Claim has resulted in the premature termination of each of the Novartis Patents.  This action completely eviscerates any and all value of the Novartis Patents to Novartis as of their arbitrary and capricious expiration dates.  By allowing the public to freely practice the inventions associated with the Novartis Patents earlier in time than warranted, the PTO has unilaterally redistributed to the public Novartis' valuable property rights without any pretense of promoting public welfare.

In doing so, the PTO simply has refused to meet its obligation to acknowledge Novartis' entitlement to the appropriate number of Day-Long Patents.  In other words, the taking of Novartis' patent term is a "direct appropriation or ouster" of Novartis from multiple Day-Long Patents corresponding to each of the issued Novartis Patents.  Accordingly, the Court should find that Novartis has experienced a compensable taking due to the deprivation of all economically beneficial use of its property by the PTO.

In the alternative, Novartis has a viable non-categorical takings claim.  A non-categorical takings claim "prohibits or restricts only some of the uses that would otherwise be available to the property owner, but leaves the owner with substantial viable economic use." *Huntleigh*, 525 F.3d at 1378 n.2.  Determining a

57

non-categorical takings claim involves an "ad hoc, factual inquiry" analyzed under the framework set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978): (a) the character of the government action; (b) the economic impact of the action on the claimant; and (c) the effects of the governmental action on the reasonable investment-backed expectations of the claimant. *Id.* (citing *Lingle*, 544 U.S. at 538-39). "[T]he *Penn Central* inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." *Lingle*, 544 U.S. at 540.

Because the analysis under the *Penn Central* factors is fact intensive, there must be appropriate and sufficient factual findings upon which to make a determination. *See Schooner Harbor Ventures, Inc. v. United States*, 569 F.3d 1359, 1366-67 (Fed. Cir. 2009). Unfortunately, an inadequate factual record as to these issues was created before the District Court. In the event that the Court concludes Novartis has not established a categorical takings claim, it should remand to the District Court for the purpose of developing the facts necessary to support an inquiry under *Penn Central* and determining the merits of Novartis' non-categorical takings claim in the first instance. *See id.* at 1367.

The full and complete term of each of the Novartis Patents is Constitutionally-protected property, and the deprivation of patent term by the PTO

constitutes a regulatory taking in violation of the Fifth Amendment of the Constitution. Novartis should prevail on its Fifth Amendment Takings Clause claim.

## **CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

For the foregoing reasons, Novartis has been deprived of PTA by the PTO for each of the Novartis Patents as detailed in its <u>Wyeth</u> Claim and its RCE Claim in a manner that was arbitrary, capricious, an abuse of discretion, not in accordance with the law, contrary to constitutional right, and in excess of statutory authority. Contrary to the determination of the District Court, each of these claims was timely raised by Novartis. Accordingly, the Court should find in favor of Novartis as to the application of both its <u>Wyeth</u> Claim and its RCE Claim to the Novartis Patents and remand to the PTO to correct the PTA for each of these patents in a manner consistent with the theories underlying these claims.

April 1, 2013

Respectfully submitted,

<u>/s/Mark H. Anania</u>
Scott S. Christie
Mark H. Anania
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel: (973) 622-4444

59

Fax: (973) 624-7070
Email: manania@mccarter.com

*Attorneys for Plaintiffs-Appellants*
*Novartis AG, Novartis Vaccines*
*and Diagnostics, Inc., and*
*Novartis Corporation*

60

# ADDENDUM A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**NOVARTIS AG, et al.,**            )
                                    )
            **Plaintiffs,**         )
                                    )
    **v.**                          )        **Civil Action No. 10-cv-1138 (ESH)**
                                    )
**HON. DAVID J. KAPPOS,**           )        **(Consolidated)**
                                    )
            **Defendant.**          )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Novartis AG and Novartis Vaccines and Diagnostics, Inc. ("Novartis") have

sued David J. Kappos, the Under Secretary of Commerce for Intellectual Property and the

Director of the U.S. Patent and Trademark Office ("PTO").  Plaintiffs bring this suit under 35

U.S.C. § 154, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, claiming

that defendant improperly determined the amount of patent term adjustment to which they are

entitled.  Before the Court are plaintiffs' Motion for Summary Judgment and defendant's Cross

Motion for Summary Judgment.  For the reasons set forth below, plaintiffs' motion will be

granted in part and denied in part, and defendant's motion will be granted in part and denied in

part.

## BACKGROUND

## I.    LEGAL FRAMEWORK

Prior to 1994, U.S. patents were granted for a term of seventeen years from the date the

patent issued.  In 1994, Congress adjusted the term of a U.S. patent to twenty years from the date

the application was filed to bring the U.S. in line with other countries' patent terms.  However, because the examination of a patent application often takes more than three years from filing to the issuance of a patent, this meant that many patentees received effective patent terms of less than the historical seventeen-year period.  Thus, in 1999, Congress amended the Patent Act by creating patent term adjustments ("PTA") to extend patent terms in response to unreasonable delays in the examination of a patent application.  *See* 35 U.S.C. § 154(b).

The Patent Act created several types of PTA, two of which are at issue here.  First, a patentee can accrue PTA if the PTO fails to take certain specified actions within fixed windows of time.  *See* 35 U.S.C. § 154(b)(1)(A).  For example, if the PTO does not issue an office action responding to a patent application within 14 months after the application was filed, the patentee will be awarded one day of PTA for every day until the first office action is issued.  *Id.*  This type of PTA is known as "A Delay."  The PTO notifies the patentee of the amount of A Delay that has been awarded when it issues the Notice of Allowance.  Because the Notice of Allowance is sent well before a patent is actually granted, the determination of A Delay is known as a Pre-Issuance Determination.

A second type of PTA accrues if the PTO fails to issue a patent within three years of the filing of the application.  *See* 35 U.S.C. § 154(b)(1)(B).  This type of PTA is known as "B Delay."  Specifically, § 154(b)(1)(B) provides that:

> if the issue of an original patent is delayed due to the failure of the [PTO] to issue a patent within 3 years after the actual filing date of the application in the United States, not including-
>     (i)      any time consumed by continued examination of the application requested by the applicant under section 132(b);
>     (ii)     any time consumed by a proceeding under section 135(a), any time consumed by the imposition of an order under section 181, or any

> time consumed by appellate review by the Board of Patent Appeals and Interferences or by a Federal court; or
>
> (iii)   any delay in the processing of the application by the United States Patent and Trademark Office requested by the applicant except as permitted by paragraph (3)(C),

the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued.

*Id.*

The PTO has promulgated two final rules interpreting the proper calculation of B Delay under § 154(b)(1)(B).  First, 37 C.F.R. § 1.702(b) states that the patent term shall be adjusted if the issuance of the patent was delayed due to the failure of the PTO to issue a patent within three years after the filing date, "but not including: (1) any time consumed by continued examination of the application under 35 U.S.C. § 1.703(b)."  Second, 37 C.F.R. § 1.703(b) states that the period of adjustment under § 1.702(b) is to be the number of days beyond three years from the filing date, but not including the number of days between the filing of a request for continued examination ("RCE") and the date the patent is issued.  In other words, § 1.703(b) provides that: (1) patentees cannot accrue B Delay for time consumed by an RCE, regardless of when it was filed, and (2) "time consumed by" an RCE includes all of the time from the filing of the RCE to the issuance of the patent.  Because B Delay accrues until the actual date of issuance, the PTO does not determine the proper amount of B Delay until the patent is granted.

After determining the proper amount of A and B Delay, the PTO must determine the extent of any overlap between the two types of delay.  The method of determining A/B Delay Overlap was changed in response to the Federal Circuit's decision in *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010).  Prior to *Wyeth*, the PTO interpreted the period

3

of B Delay to include the entire time between the filing of an application and the issuance

of a patent more than three years later.  Thus, if a patent took longer than three years to

issue, any A Delay that occurred during the pendency of the application by definition

overlapped with the period of B Delay, and was not awarded to the patentee as PTA.  As

the Federal Circuit explained, "[u]sing this framework, the PTO use[d] either the greater

of the A delay or B delay to determine the appropriate adjustment, but never combine[d]

the two." *Wyeth*, 591 F.3d at 1368.  In *Wyeth*, the Federal Circuit held that the PTO's

interpretation of the overlap provision was erroneous; A Delay and B Delay should be

aggregated so long as that aggregation would not require counting the same calendar day

twice.  *See id.* at 1369-70.

    After the Federal Circuit's decision in *Wyeth*, the PTO announced that it would not seek

further review of that decision and would implement the court's interpretation of A/B Delay

Overlap when determining the appropriate amount of PTA for issued patents beginning on

March 2, 2010.  (AR166-67.)  The PTO also announced that it would permit recalculation of

PTA for patents issued prior to March 2, 2010, so long as the request for reconsideration was

filed within 180 days of the grant of the patent.  (AR170.)  Thus, only patents that had been

granted within the 180 days prior to that announcement were eligible for a recalculation of their

PTA using the new post-*Wyeth* interpretation.

    Because the overlap determination depends on the amount of B Delay, it is also done at

the time the patent is granted.  The final determination of PTA, which factors in just A Delay but

also B Delay and any overlap between A and B Delay, is therefore known as an Issuance

Determination.

## II.      PROCEDURAL HISTORY

On July 6, 2010, Novartis filed suit, alleging that the PTO had improperly calculated the amount of PTA to which eleven of its patents were entitled.  (Complaint [ECF No. 1].)  Novartis argued first that the PTO acted improperly in refusing to apply the post-*Wyeth* interpretation of A/B Delay Overlap to patents granted prior to September 2, 2009 ("the *Wyeth* Claim").  Second, Novartis challenged the PTO's interpretation of the effect of an RCE on the determination of B Delay ("the RCE Claim").  On February 16, 2012, this Court ordered that this case be consolidated with three other matters—*Novartis v. Doll*, No. 09-cv-1203, *Novartis v. Kappos*, No. 11-cv-0659, and *Novartis v. Kappos*, No. 11-cv-0821—all of which raise the same legal issues.  Given the consolidation of the four cases, the PTA determinations for twenty-three of Novartis' patents are now at issue.

Plaintiffs filed a Motion for Summary Judgment on May 16, 2012. ([Dkt. No. 35] ("Pls.' Mot.").)  Defendant then filed a Cross Motion for Summary Judgment and Opposition to plaintiffs' motion on June 18, 2012.  ([Dkt. No. 38] ("Def.'s Mot.").)  On July 18, 2012, plaintiffs filed an Opposition to defendant's Cross Motion and a Reply to defendant's Opposition to its Motion.  ([Dkt. No. 40] ("Pls.' Reply").)  And finally, on August 20, 2012, defendant filed a Reply to plaintiff's Opposition.  ([Dkt. No. 42] ("Def.'s Reply").)

## ANALYSIS

## I.       LEGAL STANDARDS

### A.       Judicial Review of Patent Term Adjustments

The APA provides judicial review of an agency action to a party who has suffered a legal wrong because of that action.  5 U.S.C. § 702.  The APA gives the court authority to "decide all

relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. It further provides that the reviewing court shall set aside an agency action that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations." *Id.*

The arbitrary and capricious standard "presumes the validity of agency action, requiring [the court] to determine whether the agency has considered the relevant factors and 'articulate[d] a rational connection between the facts found and the choice made.'" *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The court "may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment." *Kisser v. Cisneros*, 14 F.3d 615, 619 (D.C. Cir. 1994).

### B.     Motion for Summary Judgment

Normally, a motion for summary judgment under Rule 56 shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "In a case involving review of a final agency action under the [APA], however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (citation omitted).

6

"Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'"  *Id.* at 90 (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)).  Thus, "when an agency action is challenged" solely with "arguments about the legal conclusion to be drawn about the agency action," then the case on review presents only a question of law and can be resolved on the administrative record pursuant to a motion for summary judgment.  *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  In that instance, a "district court[ ] reviewing agency action under the APA's arbitrary and capricious standard do[es] not resolve factual issues, but operate[s] instead as [an] appellate court[ ] resolving legal questions." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996).

In this case, the only issue for review is a legal question as to whether the PTO's determination of PTA for each of Novartis' patents was a valid and appropriate exercise of agency discretion.

## C.     Standard of Review

In answering this question, it is necessary to determine what level of deference the PTO's determination is entitled to.  Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), "where Congress has authorized an agency to promulgate substantive rules under a statute it is charged with administering," the court "must uphold the agency's interpretation of an ambiguity or omission in that statute if the interpretation is a reasonable one." *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1549 (Fed. Cir. 1996) (citing *Chevron*, 467

U.S. at 842-45).  However, the Federal Circuit has previously determined that the PTO does not

have the authority to issue substantive rules, only procedural regulations regarding the conduct of

proceedings before the agency.  *See Merck*, 80 F.3d at 1549-50.  Indeed, 35 U.S.C.

§ 154(b)(3)(A) limits the PTO's authority to prescribing "regulations establishing procedures for

the application for and determination of patent term adjustments."  35 U.S.C. § 154(b)(3)(A).

Thus, the PTO's determination is not entitled to *Chevron* deference.  *See Merck*, 80 F.3d at 1549-

50; *Wyeth v. Dudas*, 580 F. Supp. 2d 138, 141 (D.D.C. 2008).

Instead, the PTO is only entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S.

134 (1944), which depends upon "the thoroughness evident in its consideration, the validity of its

reasoning, its consistency with earlier and later pronouncements, and all those factors which give

it power to persuade, if lacking power to control."  *Id.* at 140; *see also Merck*, 80 F.3d at 1550.

In other words, a court will only defer to an agency interpretation if, among other things, "the

agency's position constitutes a reasonable conclusion as to the proper construction of the

statute."  *See Cathedral Candle Co. v. United States Int'l Trade Comm'n*, 400 F.3d 1352, 1366

(Fed. Cir. 2005).

## II.    TIMELINESS

Challenges to PTA determinations are governed by 35 U.S.C. § 154(b)(4)(A).  That

section provides:

> An applicant dissatisfied with a determination made by the Director under
> paragraph (3) shall have remedy by a civil action against the Director filed in the
> United States District Court for the District of Columbia within 180 days after the
> grant of the patent.[1]

---

[1] For complaints filed on or after September 16, 2011, the U.S. District Court for the Eastern
District of Virginia now has jurisdiction over actions under 35 U.S.C. § 154(b).  Pub. L. 112-29
at § 9(a), 125 Stat. 284, 316.

35 U.S.C. § 154(b)(4)(A). Defendant does not dispute that timely complaints were filed with respect to three of the Novartis Patents—U.S. Patent Nos. 7,807,155 ("the '155 patent"), 7,968,518 ("the '518 patent"), and 7,973,031 ("the '031 patent"). (Def.'s Mot. at 10.) However, the PTO asserts that because the complaints relating to the remaining patents were filed more than 180 days after the grant of each of those patents, Novartis is foreclosed from seeking additional PTA for those patents. (*Id.* at 10-11.)

As an initial matter, Novartis asserts that the 180-day limitation of § 154(b)(4)(A) does not apply to its claims. By its terms, § 154(b)(4)(A) applies to determinations "under paragraph (3)" of that section. Novartis asserts that § 154(b)(3) governs only Pre-Issuance PTA Determinations, meaning determinations of A Delay. (Pls.' Mot. at 31-32.) Novartis points to several portions of that subsection to support its position. For example, § 154(b)(3)(B)(i) states that: "the Director shall . . . make a determination of the period of any patent term adjustment under this subsection, and shall transmit a notice of that determination *with the written notice of allowance* under section 151." 35 U.S.C. § 154(b)(3)(B)(i) (emphasis added). Because neither B Delay nor A/B Overlap has been determined at the time a Notice of Allowance is issued, Novartis contends that this section should not apply to challenges to those determinations. (*Id.*) Similarly, § 154(b)(3)(D) states that the Director "shall proceed to grant the patent *after* completion of the Director's determination of a patent term adjustment under the procedures established under this subsection." 35 U.S.C. § 154(b)(3)(D) (emphasis added). In Novartis' view, the fact that the statute suggests that the PTA determination must be made prior to the grant of the patent indicates that it relates only to Pre-Issuance Determinations. (*Id.* at 32.) Thus, because no Pre-Issuance PTA Determinations are implicated here, Novartis argues that 35

9

U.S.C. § 154(b)(3) is irrelevant, and the 180-day limitations period of 35 U.S.C. § 154(b)(4)(A) does not apply. Instead, according to Novartis, the general six-year statute of limitations of the APA (*see* 28 U.S.C. § 2401(a)) applies to Novartis' appeal of Issuance PTA Determinations. (*Id.* at 34.)

The Court disagrees. Section 154(b)(3) is entitled "Procedures for patent perm adjustment determination" and is the only section of the statute to address the PTO's procedures for determining PTA. From its plain language, it is clearly intended to relate to all PTA determinations, regardless of when they occur. Indeed, the very language Novartis points to— that the Director "shall proceed to grant the patent after completion of the Director's determination"—clearly requires that the Director make a full determination of all types of PTA because both A Delay and B Delay (as well as any overlap between the two) must be determined before the patent is granted.

In addition to being consistent with the plain meaning of the statute, this interpretation avoids absurd results. Congress clearly intended to include strict controls on judicial review of PTA determinations. Under Novartis' interpretation, only Pre-Issuance Determinations would be subject to those controls, while the final, complete PTA determinations that accompany an issued patent would not. Instead, a patentee would have 180 days in which to challenge the calculation of A Delay but six years in which to challenge B Delay and A/B Delay Overlap.

In reaching this conclusion, this Court is persuaded by the recent opinion in *Janssen Pharmaceutica N.V. v. Kappos*, 844 F. Supp. 2d 707 (E.D. Va. 2012), that 35 U.S.C. § 154(b)(4)(A) provides the exclusive means for judicial challenges to the PTO's PTA determinations. *Id.* at 713. That court held:

> [I]n a case in which a patentee is challenging the number of days of PTA calculated by the USPTO, whether that calculation occurred before the patent was issued or afterwards, such a decision is governed by §§ 154(b)(3) and (b)(4)(A). In other words, any challenge to a PTA determination is governed by § 154(b)(4)(A).

*Id.* The court reasoned that a contrary holding would be "entirely inconsistent with the Congressional intent plain on the face of the statute—to strictly limit the forum and timing for seeking judicial review of these very specific USPTO decisions." *Id.* As such, the 180-day limitation prescribed by that section applies to the PTA determinations at issue here.

## A. Ordinary Tolling

Judicial review of agency actions is ordinarily tolled until the agency action is final. *See Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002) (citing *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987)). "A request for administrative reconsideration renders an agency's otherwise final action non-final with respect to the requesting party." *Clifton*, 294 F.3d at 110 (citing *United Transp. Union v. Interstate Commerce Comm'n*, 871 F.2d 1114, 1116 (D.C. Cir. 1989)). Thus, judicial review of an agency action must be tolled during the period of agency reconsideration. As the Supreme Court explained in *Locomotive Engineers*:

> [W]here a petition for reconsideration has been filed within a discretionary review period specifically provided by the agency (and within the period allotted for judicial review of the original order) . . . the petition tolls the period for judicial review of the original order, which can therefore be appealed to the courts directly after the petition for reconsideration is denied.

482 U.S. at 279.

With respect to U.S. Patent No. 7,470,792 ("the '792 patent"), Novartis filed a petition for PTA reconsideration with the PTO within two months of issuance, as directed by 37 C.F.R. §

11

1.705(d), raising the same claim that is now before this Court.  Within 180 days of the PTO's denial of reconsideration (but more than 180 days after the issuance of the patent), Novartis filed suit in this court.  Thus, Novartis argues that the 180-day limitation period should have been tolled by its filing of a petition for reconsideration, rendering its claim with respect to the '792 patent timely.[2]

The PTO asserts that the ordinary tolling rule does not apply to § 154(b)(4)(A).  First, the PTO argues that applying the normal tolling rule to § 154(b)(4)(A) would read out the language "after the grant of the patent" from the statute.  (Def.'s Mot. at 27.)  However, it is well established that "a statutory provision setting the limitations period is *not* incompatible with a tolling rule." *Bristol-Myers Squibb Co. v. Kappos*, 841 F. Supp. 2d 238, 243, *motion for reconsideration denied*, 2012 WL 4127636 (D.D.C. Sept. 20, 2012).  Indeed, this Circuit has applied the ordinary tolling rule to numerous statutes providing for specific limitations periods that are triggered by specified dates.  *See, e.g.*, *Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 920-21 (D.C. Cir. 1998) (tolling 90-day limitations period beginning from the date of the challenged promulgation or denial); *Los Angeles SMSA Ltd. P'ship v. FCC*, 70 F.3d 1358, 1359 (D.C. Cir. 1995) (tolling a 30-day limitation period beginning on "the date upon which public notice is given of the decision or order complained of").  Thus, the mere fact that § 154(b)(4)(A)

---

[2] The PTO correctly points out that Novartis did not allege that ordinary tolling applied in its Second Amended Complaint.  (Def.'s Mot. at 26 n. 10.)  Although it remains an "open question" in the D.C. Circuit as to "whether the Federal Rules permit parties to impliedly consent to 'try' issues not raised in their pleadings through summary judgment motions," the Court will follow the majority of circuits that do allow constructive amendment of the pleadings under Rule 15(b) through summary judgment motions.  *See Turner v. Shinseki*, 824 F. Supp. 2d 99, 122 n.23 (D.D.C. 2011) (collecting cases).

sets a specific date from which the 180-day limitation period is to run—the date the patent is granted—does not render the general tolling rule inapplicable.

Next, the PTO argues that the language of § 154(b)(4)(A) suggests that Congress clearly intended "to depart from the ordinary judicial treatment of agency orders under reconsideration." (Def.'s Mot. at 27-28 (quoting *Stone v. INS*, 514 U.S. 386, 393 (1995)).)  Specifically, the PTO argues that by tying the 180-day limitation to the date of patent grant and expressly providing that the issuance of the patent should proceed regardless of any reconsideration sought by the applicant, *see* 35 U.S.C. § 154(b)(3)(D), Congress clearly intended to override the application of the general tolling rule.  (*Id.* at 28.)

The same argument by the PTO was rejected in *Bristol-Myers Squibb*, 841 F. Supp. 2d at 244-45.  The Court concluded defendant's arguments do not "support a conclusion that Congress intended for the ordinary tolling rule not to apply to Section 154(b)(4)(A)."  *Id.* at 244.  To the contrary, § 154(b)(4)(A) expressly states that Chapter 7 of Title 5—which includes the general tolling rule—applies to any actions arising under that section, a fact this Court recently noted "indicates that Congress affirmatively intended for the tolling rule to apply to judicial review of patent term adjustment determinations."  *Bristol-Myers Squibb*, 2012 WL 4127636, at *6.  Thus, nothing about § 154(b)(4)(A) "direct[s] this Court to take any action inconsistent with the normal tolling rule."  *Bristol-Myers Squibb*, 841 F. Supp. 2d at 245.

Because the Court holds that the general tolling rule applies, and because Novartis filed its complaint with respect to the '792 patent within 180 days after the denial of its petition for reconsideration, Novartis' claim with respect to that patent was timely filed.

13

## B. Equitable Tolling

With respect to the nineteen remaining patents that were neither timely filed nor susceptible to ordinary tolling, Novartis argues that the 180-day limitations period should be equitably tolled.

The Court must first determine if § 154(b)(4)(A) is susceptible to equitable tolling.  That question turns on whether the statute is jurisdictional in nature.  The law on what constitutes a "jurisdictional" statute is, to say the least, far from clear.  *See, e.g.*, *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("Recognizing our 'less than meticulous' use of the term in the past, we have pressed a stricter distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not.") (quoting *Kontrick v. Ryan*, 540 U.S. 442, 454-55 (2004)); *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 183 (D.C. Cir. 2012) ("In recent years, the terminology of jurisdiction has been put under a microscope at the Supreme Court.  And the Court has not liked what it has observed—namely, sloppy and profligate use of the term 'jurisdiction' by lower courts and, at times in the past, the Supreme Court itself.") (Kavanaugh, J., dissenting).

In light of these recent admonishments to construe the meaning of "jurisdictional" narrowly, it is perhaps more prudent to conclude that § 154(b)(4)(A) should be viewed as a "claim-processing rule"—one that "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011), and therefore, it is entitled to a "rebuttable presumption in favor of equitable tolling."  *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (internal

14

quotation marks omitted).  The Court, however, need not resolve this knotty question, because it finds that § 154(b)(4)(A) should not be equitably tolled under the circumstances of this case.

Equitable tolling is available to a petitioner who has been diligent in pursuing his rights, but for whom some extraordinary circumstance stood in the way and prevented timely filing. *Holland*, 130 S. Ct. at 2562.  The decision to equitably toll a statute of limitations is made on a "case-by-case" basis depending on the facts of the case.  *Id.* at 2563.

With respect to its *Wyeth* Claim, Novartis argues first that it lacked knowledge of its claim until the Federal Circuit's decision on January 7, 2010, in *Wyeth* changed the law with respect to A/B Delay Overlap.  (Pls.' Mot. at 48-49.)  Additionally, Novartis argues that it reasonably relied on the PTO's longstanding and consistent use of its pre-*Wyeth* method of calculating A/B Delay Overlap; according to Novartis, up until the *Wyeth* decision forced the PTO to use the correct interpretation of A/B Delay Overlap, Novartis reasonably believed that it would have been futile to file a lawsuit appealing the PTO's PTA determinations under that method of calculation.  (*Id.*)  Thus, Novartis suggests that the 180-day limitation should have been equitably tolled until the PTO's January 20, 2010 announcement that it would not seek further appellate review of the Federal Circuit's *Wyeth* decision.

With respect to its RCE Claim, Novartis goes even further, asserting that because no federal court has yet ruled on the viability of this claim, the statute of limitations has not yet begun to run.  (*Id.* at 49.)  Novartis insists that it was not until this claim was raised by Abbott Laboratories in *Abbott v. Kappos*, 10-cv-1853 (D.D.C.), filed on October 29, 2010, that Novartis even became aware that this was a possible claim.  (*Id.*)

15

Novartis' arguments are unpersuasive. In effect, Novartis' position amounts to a contention that the statute of limitations should not begin to run until such time as a federal court has actually ruled on and upheld the very claims they seek to pursue. But of course, Novartis was free to raise the same issues that Wyeth and Abbott Laboratories raised in their lawsuits within the 180 days after their patents were granted. As this Circuit has previously noted:

> The only sure way to determine whether a suit can be maintained is to try it. The application of the statute of limitations cannot be made to depend upon the constantly shifting state of the law, and a suitor cannot toll or suspend the running of the statute by relying upon the uncertainties of controlling law. It is incumbent upon him to test his right and remedy in the available forums. These suits were not commenced until through the labor of others the way was made clear.

*Commc'ns Vending Corp. of Arizona, Inc. v. FCC*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (quoting *Fiesel v. Bd. of Educ.*, 675 F.2d 522, 524-25 (2d Cir. 1982)). It is of no moment that the PTO had consistently applied its pre-*Wyeth* interpretation of A/B Delay Overlap; the question is not what the PTO would have done in response to a request for reconsideration, but rather what a federal court would have done in reviewing the PTO's interpretation. That was both unasked and unanswered until Wyeth raised exactly this issue in its lawsuit, just as Novartis was free to do at any point within 180 days of its patents being granted.

Regardless, contrary to Novartis' argument, a change in law is not such an extraordinary circumstance as to justify the application of equitable tolling. *See Nihiser v. White*, 211 F. Supp. 2d 125, 130-31 (D.D.C. 2002). Indeed, this case is analogous to *Venture Coal Sales Co. v. United States*, 370 F.3d 1102 (Fed. Cir. 2004), in which Venture Coal argued that its injury from the Coal Sales Tax was "inherently unknowable" until the tax was held unconstitutional in *Ranger Fuel Corp. v. United States*, 33 F. Supp. 2d 466 (E.D. Va. 1998). *See Venture Coal*, 370

F.3d at 1107.  The Federal Circuit rejected that argument and noted that, just like Novartis here, Venture Coal argued "not that it lacked *sufficient facts* on which it could sue, but rather it did not know the *legal theory* on which its refund claim might succeed."  *Id.*; *see also Nihiser*, 211 F. Supp. 2d at 131 ("[A]ll the relevant facts were known.  It was the meaning of the law that was misunderstood.") (quoting *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1572 (Fed. Cir. 1993)).  The court pointed out that "Venture Coal was entitled to challenge the Coal Sales Tax when it paid the taxes as much as were the plaintiffs in *Ranger Fuel*." *Venture Coal*, 370 F.3d at 1106.

None of the cases relied on by Novartis undercut *Venture Coal*.  In each case, the "change in circuit precedent" that was found sufficient to justify equitable tolling related to the statute of limitations itself; in other words, the law changed in such a way that the petitioners' habeas filings, which would otherwise have been considered timely, no longer were.  *See, e.g.*, *Shelton v. Purkett*, 563 F.3d 404, 407 (8th Cir. 2009) ("Because Shelton's petition was just barely timely under *Nichols*, it is clear that under the *Riddle* rule . . . Shelton's petition was untimely."); *Griffin v. Rogers*, 399 F.3d 626, 636 (6th Cir. 2005) ("This 30-day window was adopted by the *Palmer* Court in January 2002 . . . [y]et Griffin failed to file within this 30-day window in October 1998, over three years before the time frame was adopted in this circuit."); *York v. Galetka*, 314 F.3d 522, 528 (10th Cir. 2003) (allowing equitable tolling because petitioner filed his habeas petition over a year before the Supreme Court decision holding that pendency of federal habeas petition does *not* toll statute of limitations); *Harris v. Carter*, 515 F.3d 1051, 1055-56 (9th Cir. 2008) ("[Harris] filed successive petitions for state post-conviction relief while ensuring that enough time would remain to file a federal habeas petition under the

then-existing *Dictado* rule. The Supreme Court's overruling of the *Dictado* rule made it impossible for Harris to file a timely petition."). In these and other similar cases, equitable tolling was justified because the unforeseeable change in law made it impossible for the petitioners to file their petitions in a timely fashion. That is a far cry from this case. Novartis benefited from the change in law but it could have (as Wyeth did) attempted to effectuate that very change through a timely challenge to the PTO's PTA determinations.

In light of these considerations, even assuming that § 154(b)(4)(A) is not jurisdictional, the facts in this case do not justify the application of the equitable tolling doctrine to Novartis' nineteen untimely complaints.

### C. Discovery Rule

As its final attempt to skirt the 180-day limitation of § 154(b)(4)(A), Novartis argues that its untimely complaints should be permitted under the discovery rule. The "discovery rule" provides that "a cause of action accrues when the injured party discovers—or in the exercise of due diligence should have discovered—that it has been injured." *Hardin v. Jackson*, 625 F.3d 739, 743 (D.C. Cir. 2010) (quoting *Nat'l Treasury Emps. Union v. FLRA*, 392 F.3d 498, 501 (D.C. Cir. 2004)).

This is nothing more than a rehash of Novartis' equitable tolling argument. Novartis claims that it did not discover that it had suffered an injury until a definitive federal court ruling was issued on the merits of its legal claims. (*See* Pls.' Mot. at 53-54.) For its *Wyeth* Claim, that ruling came from the Federal Circuit in January 2010. For its RCE Claim, however, no such court ruling has occurred to date and so Novartis suggests that it has not yet discovered any injury resulting from the PTO's actions.

18

As is the case with the equitable tolling doctrine, it can be debated as to whether the discovery rule even applies to § 154(b)(4)(A). The PTO suggests that because Congress specified that the statute of limitations would begin to run as of the date the patent was granted, Congress implicitly rejected the use of a discovery rule, whereby the statute of limitations would begin to run when the injury is first discovered by the injured party. (Def.'s Mot. at 24-25.)

However, as previously discussed, the Court need not resolve this question because it finds that the discovery rule, even if available under § 154(b)(4)(A), would not be applicable to this case. The injury that Novartis alleges is a procedural one—that the PTO misapplied the statutory procedure for PTA determination and harmed Novartis' interest in obtaining the full patent term to which it is entitled. However, as of the date that each patent was granted, Novartis knew the amount of PTA it had been awarded and knew what procedure the PTO had used in making that determination; all of the *facts* underlying Novartis' injury were both knowable and in fact *known* by Novartis as of that date. Thus, the 180-day limitations period began to run on that date, and Novartis' failure to challenge the PTA determinations within that 180-day period rendered nineteen complaints untimely.

The Court will now turn to the merits relating to the four patents (the '155, '518, '031, and '792 patents) as to which Novartis has raised timely claims.

## III.   RCE CLAIM

For three of the four timely-challenged patents, Novartis asserts that the PTO improperly calculated the amount of B Delay to which it was entitled under § 154(b)(1)(B). That section provides:

> [I]f the issue of an original patent is delayed due to the failure of the [USPTO] to
> issue a patent within 3 years after the actual filing date of the application in the

19

United States, not including—(i) any time consumed by continued examination of the application requested by the applicant under section 132(b) . . . the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued.

35 U.S.C. § 154(b)(1)(B).  As explained above, the PTO has promulgated a regulation interpreting § 154(b)(1)(B) as meaning: (1) that any time consumed by an RCE is excluded from the B Delay determination, even if it occurs after the three-year window has closed; and (2) that "time consumed by" an RCE extends until the issuance of the patent.  *See* 37 C.F.R. § 1.703(b)(1).  Novartis challenges both of these interpretations.  Because the Court concludes that the PTO erred in excluding from B Delay time consumed by an RCE filed after the three-year window has closed, the Court need not address Novartis' alternative argument regarding the proper interpretation of "time consumed by" an RCE.

The PTO and Novartis disagree about the proper interpretation of § 154(b)(1)(B).  Both parties agree that the statutory provision has two parts:  a "trigger" provision and a "remedy" provision.  First, it identifies a three-year period running from the date of the filing of the application.  If a patent is not issued within that three-year period—the "trigger"—then the statute provides for a "remedy."  The parties disagree, however, about whether the "not including" clause applies to the trigger or to the remedy.

The PTO has interpreted the "not including" clause to be a part of the remedy provision; in other words, if a patent has not issued within three years of its filing date, the patentee shall be entitled to a day-for-day patent term adjustment for every day until the patent issues, but "not including" any time consumed by an RCE.  (*See* Def.'s Mot. at 33.)  Novartis insists that the clause applies to the trigger.  Under Novartis' view, if the patent is not issued within the three-year period, "not including" time consumed by an RCE, then the patentee is entitled to the day-

for-day remedy.  (Pls.' Mot. at 21-22.)  In other words, the filing of an RCE tolls the running of the three-year clock, but if the three-year clock runs out, the applicant would be entitled to a day-for-day patent term adjustment for every day until the patent issues, regardless of what activity occurred during that time—even an RCE.  (*Id.*)

This exact issue was recently decided by the Eastern District of Virginia in *Exelixis, Inc. v. Kappos*, 2012 WL 5398876 (E.D. Va. Nov. 1, 2012).  The issue in that case—as here—was "whether § 154(b)(1)(B) requires that, or even addresses whether, any PTA be reduced by time attributable to an RCE where, as here, the RCE is filed *after* the expiration of the three year guarantee period specified in that statute."  *Id.* at *2 (emphasis added).  Like Novartis, Exelixis argued that "the PTO improperly calculated B delay by not providing a day for day PTA for time consumed by the RCE filed after the three year period had expired."  *Id.* at *5.  And just as it did in this case, the PTO argued that "the time consumed by an RCE is always excluded from the calculation of B delay because, in the PTO's view, any time consumed by an RCE is subtracted from the PTA awarded under subparagraph (B), regardless of when the RCE is filed."  *Id.*

Judge Ellis agreed with Exelixis' interpretation.  First and foremost, he concluded that the plain and unambiguous language of § 154(b)(1)(B) makes clear that the three-year clock is tolled by the filing of an RCE, but that "once the three year clock has run, PTA is to be awarded on a day for day basis regardless of subsequent events."  *Id.* at *6.  In other words, the "not including" language of § 154(b)(1)(B) "clearly and unambiguously modifies and pertains to the three year period and does not apply to, or refer to, the day for day PTA remedy."  *Id.*

Second, Judge Ellis noted that the plain meaning of § 154(b)(1)(B) was supported by that section's structure and purpose.  Specifically, the statute is designed to provide compensatory

21

PTA for delays attributable to the PTO, while reducing PTA for delays attributable to the applicant. However, the filing of an RCE is not one of the listed categories of "applicant delay" provided for in § 154(b)(2)(C). Thus, Judge Ellis concluded that it was erroneous for the PTO to punish applicants for filing RCEs. *Id.* at *6-7.

Judge Ellis also thoroughly dispensed with the very arguments that the PTO has raised in this case. For example, in response to the PTO's insistence that its construction of § 154(b)(1)(B) should be entitled to *Skidmore* deference, Judge Ellis pointed out that "*Skidmore* deference is unwarranted, when, as here, the statute is unambiguous." *Id.* at *8. Similarly, he flatly rejected the PTO's argument that the plain language of § 154(b)(1)(B) renders the subsequent section—§ 154(b)(1)(C)—superfluous. *Id.* at *8 n. 16. And finally, Judge Ellis addressed the PTO's argument that Exelixis' proposed construction could lead to disparate treatment of some similarly-situated applicants, depending on which side of the three-year line the applicant files his RCE on. *Id.* In doing so, he reiterated the Federal Circuit's admonishment that, "[r]egardless of the potential of the statute to produce slightly different consequences for applicants in similar situations, this court does not take upon itself the role of correcting all statutory inequities." 591 F.3d at 1370. Judge Ellis also noted that it is within the PTO's power to minimize this disparate treatment by issuing timely notices of rejection such that RCEs must be filed within the three-year period. *Exelixis*, 2012 WL 5398876, at *8.

This Court finds Judge Ellis' well-reasoned opinion to be persuasive. It will therefore adopt his rationale for concluding that the PTO's interpretation is contrary to the plain and unambiguous language of § 154(b)(1)(B), and that it contravenes the structure and purpose of the statute.

Additionally, the Court notes one further consideration, not addressed by the parties in this case but raised by Abbott Biotherapeutics in *Abbott v. Kappos*, 10-cv-1853 (D.D.C.) that helps to bolster the conclusion reached here. Abbot notes that the PTO's position here—as embodied in 37 C.F.R. § 1.703(b)—is in conflict with another of the PTO's regulations. (*See* Plaintiff's Reply at 6-7, *Abbott v. Kappos*, No. 10-1853, July 18, 2012 [ECF No. 31].) Specifically, § 1.703(b) applies the "not including" language of § 154(b)(1)(B) to the "remedy" provision of that section. It states that:

> The period of adjustment under § 1.702(b) is the number of days, if any, in the prior beginning on the day after the date that is three years after the date on which the application was filed under 35 U.S.C. 111(a) . . . , but not including the sum of the following periods: (1) The number of days, if any, in the period beginning on the date on which an [RCE] was filed and ending on the date the patent was issued.

37 C.F.R. § 1.703(b). That section is therefore consistent with the PTO's position in this litigation: the "trigger" occurs if a patent is not issued within three years after the application's filing date, and the "remedy" consists of day-for-day PTA after that time, but does not include any time consumed by an RCE. (Def.'s Mot. at 32-33.)

However, that regulation is in tension with the immediately preceding PTO regulation, 37 C.F.R. § 1.702(b), which applies the "not including" language of § 154(b)(1)(B) to the "trigger" provision of that section and considers RCE in determining whether the three-year clock has run. It states:

> [T]he term of an original patent shall be adjusted if the issuance of the patent was delayed due to the failure of the Office to issue a patent within three years after the date on which the application was filed under 35 U.S.C. 111(a) . . . , but not including: (1) Any time consumed by continued examination of the application under 35 U.S.C. 132(b).

23

37 C.F.R. § 1.702(b).  In other words, § 1.702(b) adopts the plain meaning of § 154(b)(1)(B), which is advocated by Novartis but disputed by the PTO in this case.  It unambiguously provides that the three-year window will be tolled during the filing of an RCE, and says nothing about the remedy to be applied if and when that three-year mark is triggered.  Thus, if both regulations were to be applied as written, time consumed by an RCE would apply to *both* the trigger and the remedy provisions of the statute, and would effectively result in the double-counting of the "not including" clause of § 154(b)(1)(B).

In response to Abbott's argument, the PTO appears to offer no explanation of the inconsistency between § 1.702(b) and its position in this litigation, or the inconsistency between § 1.702(b) and § 1.703(b).  Instead, the PTO ignores both the plain language of the statute and the text of § 1.702(b) and advocates an inconsistent interpretation of § 1.703(b).  These apparent inconsistencies further bolster the Court's view that the PTO's interpretation of § 154(b)(1)(B) is contrary to law.

In sum, the PTO's interpretation of § 154(b)(1)(B) contravenes the plain meaning of the statutory language and therefore must be set aside as "not in accordance with law" and "in excess of statutory . . . authority" pursuant to 5 U.S.C. § 706(2)(A) and (C).

## IV.   *WYETH* CLAIM

In *Wyeth*, the Federal Circuit held that the PTO's interpretation of § 154(b)(2)(A) regarding the calculation of A/B Delay Overlap was improper.  *See* 591 F.3d at 1372.  After the Federal Circuit's ruling, the PTO announced that it would not seek further review of the decision and would use the proper method of calculating A/B Delay Overlap both going forward and for patents issued before March 2, 2010, so long as the request for recalculation was filed within 180

24

days of the issuance of the patent.[3]  (AR166-175).  Novartis argues that the PTO's decision not

to apply the post-*Wyeth* calculation method to the patents issued before September 2, 2009 was

arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  (Pls.'

Mot. at 17-18.)  Although Novartis initially alleged that eleven of the patents at issue in this case

were entitled to additional PTA because of the PTO's failure to apply *Wyeth*, only one of those

patents—the '792 patent—was timely challenged in this Court.

      As an initial matter, it is noteworthy that the PTO failed to respond to Novartis' *Wyeth*

claim, so the Court may treat this argument as conceded.  *See Day v. D.C. Dep't of Consumer &*

*Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002).

      Regardless, under the PTO's own policy, the *Wyeth* method of calculating A/B Delay

Overlap should have been applied to the '792 patent.  Specifically, on March 10, 2010, the PTO

wrote a letter to the Patent Public Advisory Committee in which it explained its position on the

application of *Wyeth* to previously-issued patents.  The PTO explained:

> The USPTO is acting consistent with the judicial review provisions of 35 U.S.C.
> § 154(b)(4) in limiting patent term adjustment recalculations to patentees who
> either:  (1) filed a request for patent term adjustment recalculation that has not yet
> been decided within the 180-day period in 35 U.S.C. § 154(b)(4); or (2) are
> currently engaged in a challenge, in the USPTO *or the courts*, to the USPTO's
> patent term adjustment determination that was commenced within the 180-day
> period in 35 U.S.C. § 154(b)(4).

---

[3] Novartis asserts that this effectively set the cut-off date for recalculation at September 2, 2009.
However, it appears to the Court that the post-*Wyeth* interpretation was actually available to
patents issued on or after August 1, 2009.  The policy discussed above was announced in the
Federal Register on February 1, 2010; thus, for any patent issued on or after August 1, 2009 (180
days prior to that announcement), the patentee would have been able to seek reconsideration of
its PTA determination.  Regardless, the PTO has not disputed Novartis' characterization of its
policy.  Moreover, only one of the patents at issue in this case was granted in the window
between August 1 and September 2, 2009—U.S. Patent No. 7,576,221—and as the challenge to
that patent was not timely filed, this appears to be a distinction without a difference.

(AR183 (emphasis added).)  Novartis first filed a complaint in this Court regarding the '792

patent on June 30, 2009.  (*See Novartis v. Doll*, 09-1203 [ECF No. 1] (D.D.C. June 30, 2009).)

As explained above, although that complaint was not filed within 180 days of the issuance of the

'792 patent, it was filed within 180 days of the PTO's denial of its request for reconsideration.

Thus, under normal tolling rules, which this Court has held apply to § 154(b)(4), at the time of

the Federal Circuit's *Wyeth* decision, Novartis was "currently engaged in a challenge, in . . . the

courts, to the USPTO's patent term adjustment determination that was commenced within the

180-day period in 35 U.S.C. § 154(b)(4)."  (AR183.)  The PTO's refusal—with no explanation

whatsoever—to follow its own policy and apply *Wyeth* to the '792 patent contravenes the APA.

In particular, the PTO failed to consider the relevant factors and to "articulate[] a satisfactory

explanation for its action including a 'rational connection between the facts found and the choice

made,'" as required by the arbitrary and capricious standard.  *Motor Vehicle Mfrs. Ass'n*, 463

U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

        In addition to violating its own policy, the PTO's refusal to apply *Wyeth* to the '792

patent is contrary to well-established law.  The '792 patent was issued on December 30, 2008, a

full two months after the district court opinion in *Wyeth*.  580 F. Supp. 2d 138.  Novartis sought

agency reconsideration of its PTA determination in February 2009, in part based on the district

court's *Wyeth* ruling.  (A1011-14.)  In June 2009, the PTO declined to apply the *Wyeth* method

of calculating overlap to the '792 patent.  (A1015-21.)  This was erroneous.  The Supreme Court

has made it clear that it is "error to refuse to apply a rule of federal law retroactively after the

case announcing the rule has already done so."  *James B. Beam Distilling Co. v. Georgia*, 501

U.S. 529, 540 (1991).  The district court's *Wyeth* opinion was applied retroactively to Wyeth;

Wyeth's patent terms were adjusted in accordance with the newly-announced rule in that case. Thus, when Novartis filed for reconsideration almost five months later, the PTO abused its discretion by refusing to calculate Novartis' patent consistently with the method adopted in *Wyeth*. Its decision to do so "violate[d] the principle of treating similarly situated parties the same." *Nat'l Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir. 1995).

For these reasons, the Court finds that the PTO erred in not applying either this Court's or the Federal Circuit's *Wyeth* decision to the '792 patent.

## V.     FIFTH AMENDMENT TAKINGS CLAIM

As its final argument, Novartis asserts that by applying its erroneous interpretations of § 154(b)(1)(B), the PTO deprived Novartis of its property interest in its patent term without compensation in violation of the Takings Clause of the Fifth Amendment. (Pls.' Mot. at 54.)

With respect to the nineteen patents for which Novartis did not timely challenge the PTA determinations under § 154(b)(4)(A), this argument is untimely and cannot now be raised.

Moreover, the Court need not address this argument as it relates to the remainder of Novartis' patents. With respect to Novartis' RCE Claim, this argument is moot, as the Court has already ordered the very remedy that Novartis seeks. Specifically, this Court ruled that the PTO's refusal to award B Delay for time consumed by an RCE filed after the three-year deadline was erroneous and ordered the PTO to recalculate the PTA determinations for three of Novartis' patents. (*See supra* Section III.) Similarly, the Court has already ruled that the PTO acted arbitrarily and capriciously in not applying the *Wyeth* method of calculating A/B Delay Overlap to the '792 patent, and has ordered the PTO to recalculate the PTA determinations for that patent.

(*See supra* Section IV.)  Thus, the Court need not determine whether either of the PTO's errors

amounted to a constitutional violation.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment is granted in part

and denied in part, and defendant's motion for summary judgment is granted in part and denied

in part.  A separate Order accompanies this Memorandum Opinion.


                                          _____/s/_____

                                          ELLEN SEGAL HUVELLE

                                          United States District Judge

DATE:  November 15, 2012

# ADDENDUM B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                           )
**NOVARTIS AG, et al.,**                   )
                                           )
                   **Plaintiffs,**          )
                                           )
           **v.**                           )          **Civil Action No. 10-1138 (ESH)**
                                           )
**HON. DAVID J. KAPPOS,**                  )          **(Consolidated)**
                                           )
                   **Defendant.**           )
_____)


## ORDER

For the reasons stated in the accompanying Memorandum Opinion [ECF No. 49], it is

hereby

**ORDERED** that plaintiff's Motion for Summary Judgment [ECF No. 35] is **GRANTED**

**IN PART** and **DENIED IN PART**, and defendant's Cross-Motion for Summary Judgment

[ECF No. 38] is **GRANTED IN PART** and **DENIED IN PART.**

It is further **ORDERED** that plaintiffs' claims with respect to United States Patent Nos.

6,656,957, 6,878,721, 7,081,532, 7,097,827, 7,098,325, 7,112,673, 7,253,257, 7,265,089,

7,323,451, 7,348,353, 7,423,148, 7,442,388, 7,470,709, 7,516,741, 7,534,890, 7,576,221,

7,687,637, 7,696,216, and 7,776,851 are **DISMISSED** as untimely; and it is further

**ORDERED** that United States Patent Nos. 7,470,792, 7,807,155, 7,968,518, and

7,973,031 are each hereby **REMANDED** to the U.S. Patent & Trademark Office for

recalculation of patent term adjustment in a manner consistent with the accompanying opinion.

**SO ORDERED**.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   November 15, 2012

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOVARTIS AG V REA,
2013-1160, -1179

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2013, true and correct copies of the foregoing PRINCIPAL BRIEF OF PLAINTIFFS-APPELLANTS NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC., and NOVARTIS CORPORATION (CORRECTED VERSION) and supporting documents were caused to be served on the below listed counsel of record via electronic mail and ECF:

Dana Kaersvang, Esq.
United States Department of Justice
Commercial Litigation Branch, Civil Division 7216
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Direct: 202-307-1294
Fax: 202-514-9405
Email: dana.l.kaersvang@usdoj.gov

Nathan K. Kelley, Deputy Solicitor
United States Patent and Trademark Office
Office of the Solicitor
P.O. Box 1450
Mail Stop 8
Alexandria, VA 22213-1450
Direct: 571-272-9035
Fax: 571-273-0373
Email: nathan.kelley@uspto.gov

1

Joseph Gerard Piccolo, Associate Solicitor
United States Patent and Trademark Office
Office of the Solicitor
P.O. Box 1450
Mail Stop 8
Alexandria, VA 22213-1450
Direct: 571-272-8744
Fax: 571-273-0373
Email: joseph.piccolo@uspto.gov

Brian Thomas Racilla, Associate Solicitor
United States Patent and Trademark Office
Office of the Solicitor
P.O. Box 1450
Mail Stop 8
Alexandria, VA 22213-1450
Direct: 571-272-8744
Fax: 571-273-0373
Email: brian.racilla@uspto.gov

Dated:  April 1, 2013

/s/Mark H. Anania
Scott S. Christie
Mark H. Anania
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel: (973) 622-4444
Fax: (973) 624-7070
Email: manania@mccarter.com

*Attorneys for Plaintiffs-Appellants*
*Novartis AG, Novartis Vaccines and*
*Diagnostics, Inc. and Novartis*
*Corporation*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

NOVARTIS AG V REA,
2013-1160, -1179

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.   This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e) .

☑   The brief contains **13,842** words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), or

☐   The brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑   The brief has been prepared in a proportionally spaced typeface using **Microsoft Word 2010** in **Times New Roman, 14 pt.**, or

☐   The brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  April 1, 2013                        /s/Mark H. Anania
                                                       Mark H. Anania

                                                       *Attorneys for Plaintiffs-Appellants*
                                                       *Novartis AG, Novartis Vaccines and*
                                                       *Diagnostics, Inc. and Novartis*
                                                       *Corporation*

3